ETHEL CLAUDE CORTLAND SMITH

*vs.*

CLAUDIA MAUDE DIGGS, CLINTON WAKEFIELD
.CORTLAND AND LORA LEE GEOHEGAN.

*Wills: undue influence; deception; fraud.   Evidence.*

The mere fact that a legatee under a will had deceived the
testator as to her attitude in regard to certain matters of im-
portance to him is not evidence proper to submit to a jury, as
tending to show the will was procured by fraud, when there
was not the slightest evidence that the testator might not have
made the same disposition of his property even had he known
the legatee's true attitude.                              p. 399

In proceedings to try the issue of fraud in procuring the exe-
cution of a will, the Court is the exclusive judge of the legal
sufficiency of the evidence, and it is its duty to determine the
question before submitting the finding of the facts to the jury.
p. 396

On an appeal from the ruling of the Court refusing a prayer
directing a verdict in favor of the caveatee, the Court is to
examine all the evidence submitted by the caveators and, assum-
ing its truth, determine whether from it the jury could ration-
ally conclude that the will in question was procured by fraud.
p. 396

The fact that a legatee had deceived the testator in regard
to a certain matter of importance to him is not evidence to
prove that the will was procured by fraud, in the absence of
evidence that had the testator known her real attitude he would
not still have made the same provision for her.          p. 400

In such a case mere conjecture is not admissible in evidence.
p. 399

*Decided April 26th, 1916.*

Appeal from the Court of Common Pleas of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. L. Marbury* and *Chas. McHenry Howard,* for the appellant.

*Edgar Allan Poe* (with a brief by *Bartlett, Poe, Claggett & Bland*), for the appellees

CONSTABLE, J., delivered the opinion of the Court.

The only question involved in this appeal is as to the correctness of the lower Court in allowing the jury to pass upon the sole issue of whether or not fraud was exercised in procuring the will of James Wakefield Cortland. The appellant and the appellee were the nieces and nephew and only heirs at law of the testator. The appellees filed a caveat to the will, and two issues were sent to a Court of law for determination—the first issue being whether the will was the result of undue influence practiced upon the testator, and the second whether the will was procured by fraud. At the conclusion of the testimony the caveators abandoned the issue of undue influence, and a verdict in favor of the caveatee was rendered on that issue; but a verdict in favor of the caveators was rendered on the issue of fraud, and the will was struck down as void.

The only contention made by the appellant is, that the evidence was legally insufficient to support the charge that the will was procured by fraud, and the jury should have been instructed to return a verdict in favor of the caveatee on that issue.

Our inquiry, then, is to examine all the evidence offered on behalf of the caveators, and, assuming the entire truth of it, determine whether from it the jury could reach a rational conclusion that the will in question was the result of fraud. The Court is the exclusive judge of the legal sufficiency of the evidence, and it is its duty to determine this before submitting to the jury the finding of the facts. And it needs no support from citation of authorities to establish, that no matter what might be the opinion of the trial Judge as to the truth of the conflicting testimony, it is his duty to submit to the jury the determination of the truth of the testimony, provided the evidence for the caveator is legally sufficient to support the conclusion sought.

It is extremely unusual that a will is attacked upon the sole ground of fraud, and we have been unable to find any case approaching a parallel to the facts of this case, for in the very nature of things such situations must be very rare; but we have had no difficulty in reaching, to our minds, the correct solution of this appeal.

The grounds to support the fraud, relied upon to avoid this will, all grow out of a caveat filed by these same caveators to another will, that of their grandfather, James Cortland. That case was reviewed by this Court and is reported as *Thomas* v. *Cortland,* 121 Md. 670.

James Cortland died, at an advanced age, in September, 1910, leaving a last will and testament, under the terms of which his entire estate, amounting to $85,000.00, was devised and bequeathed to his only surviving child James Wakefield Cortland, the testator in the present case. There were also four grandchildren surviving him, children of a deceased son, and the parties to the present litigation. Living with James Cortland at the time of his death, were his son and his grandchild Ethel Claude Cortland, now Smith, the appellant. After the death of the elder Cortland the son and the appellant continued their home together, she being supported by him, until his death in May, 1914.

The three other grandchildren were dissatisfied with the provisions of their grandfather's will, and, in October, 1910, consulted counsel with reference to having it set aside. In January, 1911, a caveat was filed by the grandson Clinton W. Cortland and a granddaughter Mrs. Thomas, and later in the same month by another granddaughter, Mrs. Diggs. The real ground upon which the will was assailed was that it was procured by the exercise of undue influence practiced by James W. Cortland upon the testator. The litigation was both lengthy and engendered much bitterness, and resulted finally in a compromise, under which each of the caveators received the amount each would have received if their grandfather had died intestate, less a one-tenth. Before the settlement was reached, however, there had been two trials; the first resulting in sustaining the will, which on appeal was reversed, and on the second trial the will was set aside. A few days after the first verdict James W. Cortland executed the will now in controversy, in which he bequeathed to the caveators to his father's will the sum of five hundred dollars each, and the residue of his estate he left to the appellant. At his death his estate was valued at about fifty thousand dollars. The parties to this appeal were his next of kin and only heirs at law.

We will not give in detail the facts offered in evidence by the caveators, whereby they sought to establish that the will was the result of the fraud of the caveatee, but will confine ourselves to giving the substance of the testimony, stating it, however, in as strong a light as it is susceptible of. As we have stated above, the charge of undue influence was abandoned, and this for the reason that there was not a word of testimony offered in furtherance of that issue. It was also admitted that the testator was in the full possession of his mental faculties. It also appears that an unusually strong bond of affection existed between the testator and the appellant. It might be well to state here that the fraud relied upon is not of the character ofttimes found in contests over wills, where a prospective beneficiary uses his position and

opportunity to slander and calumniate to a testator others who should equally share in his bounty, for the purpose of defeating them of their share, to the advantage and benefit of himself. Indeed it is to all intents and purposes admitted, that in the practical cutting off of the caveators from sharing in the estate, the testator was justified by their action in the litigation over the grandfather's will, but the contention is made, that if the testator had known of the alleged part the appellant had taken in that litigation she too would have been ignored in the distribution of his estate.

The facts are, and we are considering them as though fully established, that, after the death of the grandfather, the appellant visited, on several occasions, the home of her mother, who was living in Washington, with two of her children, Clinton and Mrs. Thomas, and was present during discussions over the will, and told them they would not get anything without a contest; and that through her the mother and Mrs. Thomas made efforts to keep Clinton from coming in contact with her uncle, for fear that Clinton would be bought off from the contest by a small sum, and maybe usurp her in the affections of the uncle. And that she got a check for fifty dollars, for Clinton from her uncle on the pretext that he would use the money to go into business in West Virginia, when, in reality, she knew he was going to use it in paying his expenses in preparing the case against the uncle. And that Mrs. Diggs was induced to join the others in the contest, because it was represented to her by the other caveators, at the instance of the appellant, that the uncle was drinking very hard and there would be nothing left. And that the appellant led the appellees to believe that, if the suit was lost and her position with her uncle was not disturbed, she would divide the estate at the uncle's death with them. This is a brief statement of the facts relied upon, but in substance is the entire case offered.

The rule to govern such a state of facts is stated in *Schouler on Wills, Exec, & Adm.* (5th Ed.), sec. 224: "Thus, it is held that when a legacy is given to a person, under a

particular character which he has falsely assumed, and which alone can be supposed the motive of the bounty, the law will not permit him to avail himself of it, and therefore he can not demand his legacy. But before applying this rule, the Court must be satisfied that the assumed character was the motive of the bounty." The cases illustrating this rule are chiefly dealing with facts where legacies have been left to ones who have falsely created the impression in the minds of the testator that they are either married or unmarried according to the needs of the situation; or legacies left to children under a false impression as to their parentage. *Kennell* v. *Abbott,* 4 Ves. 802; *Rishton* v. *Cobb,* 5 My. & Cr. 145; *Wilkinson* v. *Joughin,* L. R. 2 Eq. 319; *Howell* v. *Troutman,* 53 N. C. 304; *Smith* v. *DuBose,* 78 Ga. 413. And according to the rule the inquiry has always been directed to whether the reason for the legacy was traceable alone to the falsely assumed character. And it is by this principle that this case should be decided.

Giving to the facts their greatest probative force, we have a case in which a beneficiary has deceived a testator as to her real attitude in a matter of importance to him. But, applying the rule, who can say that if the testator had known of her attitude he would not have made the same disposition of his estate? It is fully established that he was extremely fond of her. He knew she was attached to her mother, and, though he himself was on bad terms with the mother, he not only allowed her to visit her mother, brother and sisters, but, in fact, during the contest over his father's will furnished her with money to pay her mother and one sister with an allowance out of which to live. It was in evidence that under a will made before thought of the first contest the testator had left one-half of his estate to the appellant and the other half to the caveators with a reversionary interest to the appellant. We are of the opinion that for a jury in effect to have said that if the testator had known of these acts of the appellant he would not have made this will is nothing short of the wildest speculation.

The appellees have not cited to us an authority in support of their contention, but do quote several paragraphs from *Davis* v. *Calvert,* 5 G. & J. 301. A perusal of that case shows that the Court expressly disclaimed any intention of passing upon the sufficiency of the evidence, but dealt alone with the admissibility of excluded evidence, and held that in cases of fraud, any fact, no matter how slight, bearing at all on the point at issue, and not wholly irrelevant, was admissible.

But the whole case of the appellees is predicated upon the statement found at the beginning of their brief, to the effect, that it can scarcely be disputed that the testator left his entire estate to the appellant because he thought she had been loyal to him and that this was undoubtedly in recognition and return for this supposed loyalty. If this had been established, there might be force in their contention, but unfortunately for them, this is left to mere conjecture and speculation. It is equally open to conjecture that he might have left her practically his entire estate because he was genuinely attached to her, as abundantly appears; and might not have allowed her alleged actions, even if known to him, to have affected his attitude to her. His attitude towards the caveators was a natural one, but he might have excused his favorite niece in giving encouragement and comfort to her own blood on the score of natural affection.

Since we are of the opinion that it is not established that the provisions in the will were made alone because of the apparent loyalty of the appellant to the interests of the testator, we must hold that the jury should have been instructed that there was no legally sufficient evidence from which it could find that the will was procured by fraud.

*Rulings reversed and cause remanded.*