[L. A. No. 6424.  Department One.—December 4, 1920.]

In the Matter of the Estate of ALPHA O. CARSON, De-
ceased.  SARAH E. WALKER et al., Appellants, v. J.
GAMBLE CARSON et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — WILL CONTEST — UNDUE IN-
FLUENCE—INSUFFICIENCY OF PETITION.—A petition for the revoca-
tion of the probate of a will alleging that the will was procured
by the false representations of the residuary legatee that he was
free to marry the testatrix and was her lawful husband insuffi-
ciently charges undue influence in the absence of any allegation of
the subjugation of the mind of the testatrix to that of the legatee.

[2] ID.—WILLS — VOID RESIDUARY BEQUEST — VALIDITY OF BEQUESTS
UNAFFECTED BY FRAUD.—A will induced by the false representa-
tions of the residuary legatee is valid as to bequests to others,
in the absence of any showing that such bequests were affected by
the representations.

[3] ID.—ORDER OF NONSUIT—APPEAL—CONSIDERATION OF EVIDENCE.—
In reviewing an order of nonsuit in a proceeding for the revoca-
tion of the probate of a will, the evidence of the contestants
must be given its utmost effect.

[4] ID.—VOID BEQUEST—FRAUD—DECEPTIVE MARRIAGE.—One who by
false representations that he is free to marry induces another to
marry him is guilty of fraud, and a bequest procured by such
fraud is void.

[5] ID.—REVOCATION OF PROBATE OF WILL — EVIDENCE — ERRONEOUS
NONSUIT.—In a proceeding for the revocation of the probate of a
will on the ground that the will was procured by the fraudulent
representations of the residuary legatee that he was free to marry
the testatrix and that he was her lawful husband, evidence that
the will was executed about a month after the marriage and that

---

2.  Equity jurisdiction to set aside will for fraud, note, 18 **Ann.**
Cas. 807.

the testatrix died a year thereafter without ascertaining the falsity of the representations is sufficient to warrant an inference that the bequest was the result of the fraud, and an order granting a nonsuit was erroneous.

[6] ID.—PRIOR MARRIAGES OF CONTESTEE — PLEADING — REFUSAL OF AMENDMENT OF PETITION—ABUSE OF DISCRETION.—In such a proceeding, it was an abuse of discretion to refuse the contestants leave to file an amended petition setting forth the number of marriages which the residuary legatee had gone through with prior to the one with the testatrix, the original petition alleging but one, in the absence of any showing of inexcusable delay on the part of contestants, or the taking of the adverse party by surprise.

[7] ID.—EVIDENCE — DECLARATIONS OF TESTATRIX — BELIEF AS TO LEGALITY OF MARRIAGE.—In such proceeding, declarations of the testatrix out of the presence of the residuary legatee to the effect that she believed her marriage to him was legal are admissible, not as evidence of the facts therein stated, but to show her state of mind.

[8] EVIDENCE — MENTAL STATE — DECLARATIONS.—Whenever the intention, feeling, belief, or other mental state of a person at a particular time, including his bodily feeling, is material to an issue under trial, evidence of such person's declarations at the time indicative of his then mental state are admissible in evidence, and it is wholly immaterial whether such declarations were made in the presence of an adverse party to the litigation or not, or what the character of the litigation is.

[9] ESTATES OF DECEASED PERSONS — PREVIOUS MATRIMONIAL EXPERIENCES — DECLARATIONS OF RESIDUARY LEGATEE — EXCLUSION ERRONEOUS.—In such proceeding, the exclusion of statements by the residuary legatee to the testatrix before their marriage as to his previous matrimonial experiences was error.

[10] ID.—EXAMINATION AS TO PREVIOUS MARRIAGES—REFUSAL ERRONEOUS.—In such proceeding, it was error to refuse to permit the contestants to examine the residuary legatee as to his previous marriages and as to his knowledge of a former wife living.

[11] ID.—MISTAKE—INSUFFICIENT GROUND OF CONTEST.—Mere mistake which does not in effect show a want of the execution of a will or a want of testamentary intent as to a portion of it is not a ground of contest.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

Ford & Bodkin for Appellants.

Horace S. Wilson and Le Roy M. Edwards for Respondents.

OLNEY, J.—One Alpha O. Carson died leaving a duly executed will by which she made bequests, aggregating some thirty-five thousand dollars, to various relatives, some forty-one in number, and left the balance of her estate, something over one hundred thousand dollars in value, to "my husband J. Gamble Carson." She also nominated the last-named as the executor of the will. The instrument was duly probated, and thereafter, and within the statutory time, certain of her heirs filed petitions contesting its validity and asking that its probate be revoked. The residuary legatee, Carson, and some of the other beneficiaries answered the petitions and trial was had before a jury upon the issues so made. At the trial, the contestants were nonsuited, and judgment was entered denying the revocation of probate. From this judgment the contestants appeal.

The grounds of contest, as alleged, were three: First, a want of due execution; second, undue influence upon the testatrix, alleged to have been exerted by Carson, and, third, fraud upon her, alleged to have been likewise practiced by him. The first ground was abandoned and may be dismissed from consideration. The substance of both the second and third grounds was that while Carson had gone through a marriage ceremony with the testatrix a year before her death, and she believed then and always thereafter that he was her husband and made her will in that belief, yet he was not such legally because he was already married to a woman who was still living and from whom he had not been divorced. It is also alleged that Carson knew he was not free to marry, and yet represented that he was, and that the testatrix's belief was induced by these false representations. It is also alleged that solely because of this belief she made the will in question leaving the bulk of her estate to him.

Shorty before the matter came on for trial the contestants offered an amended petition for revocation and asked for leave to file it. Their application was denied, and the contestants complain of this ruling as error. When it came to the trial, the contestants were also prevented in very large

measure from proving their case by rulings of the court excluding their evidence, and of these rulings they also complain. We think the rulings were in truth wrong, but it is apparent that if both the evidence introduced by the contestants and that which they sought to introduce and were not permitted to, would together not have made out a case justifying the revocation of probate, the result would have been the same, and the errors mentioned were not prejudicial. The first and the most important point in the case, therefore, is, was the evidence for the contestants, both that which they introduced and that which they sought to introduce, sufficient to justify a revocation of the probate of the will. **[1]** In discussing this point, it should be said at the outset that neither the contestants' petition nor their evidence makes out a case of undue influence. The only substantial difference between the second count of the petition, that alleging undue influence, and the third count, that alleging fraud, is that in one it is alleged that the will was executed under the undue influence of Carson, consisting in his deceit, whereby he induced the testatrix to marry him and to assume and maintain the relation of wife and husband with him, and in the other it is alleged that the will was executed through his fraud, consisting in the same deceit. There is no allegation of any subjugation of the mind or will of the testatrix to that of Carson, so that in making her will she was not acting freely upon the facts as she believed them to be. Such subjugation of the mind of the testatrix was an essential element of a case of undue influence and had to be both alleged and proved. It was not alleged, as we have said, nor was there any evidence whatever introduced or offered tending to prove it. It is alleged that the testatrix and Carson lived in closest intimacy and association until her death, but there is no allegation that Carson abused the confidential relation which thus existed. The wrong alleged is the deceit whereby that relation was brought about and came to exist, and not any misuse of the relation as it did exist. The distinction between a case of undue influence and one of fraud is discussed at length in *Estate of Ricks,* 160 Cal. 467, beginning at page 480, [117 Pac. 539], and it is not necessary to repeat that discussion here. Suffice it to say that it is to the effect mentioned, that in order that there be undue influence there must be a subjugation of the will of one to that of another.

[2] The present case is, then, one of fraud only. Being such, there is another point of which we would speak before taking up the sufficiency of the evidence. It seems to have been assumed that in case the contestants showed that the will was induced by the alleged fraud of Carson, the entire will would fail. We do not so understand. There is nothing, either in the allegations of the contestants' petition or in their evidence which would tend to show that any of the other beneficiaries was a party to Carson's alleged fraud, or that his fraud had any effect upon the testatrix's testamentary intentions other than to induce her to make him her residuary legatee and to appoint him as her executor. So far as the other beneficiaries are concerned, their situation is that the testatrix died leaving behind her a duly executed instrument expressing her testamentary wishes in their favor unaffected by undue influence, fraud, or other vitiating circumstance. This means nothing more or less than that the will is perfectly valid as to them. The result is that it is only the portions of the will in favor of Carson whose probate should be revoked in case the contestants should succeed, the remaining portions continuing as a valid expression of the testatrix's testamentary intention. (1 Schouler on Wills, Executors and Administrators, sec. 248, 14 Cyc. 1149; Civ. Code, sec. 1272.) If it were not possible to separate the portions affected by the fraud from those unaffected, it may be that the whole will would have to fail, but that question is not presented here, for the provisions in favor of Carson are easily and completely separable from the remainder. This being the situation, it is apparent that the beneficiaries, other than Carson, are not affected by the contest, however it may go, and are not interested parties to it.

[3] Passing now to the sufficiency of the evidence, the evidence of the contestants, giving to it its utmost effect as we must do in view of the fact that it is an order of nonsuit which is under review, was confined to showing that the testatrix married Carson under the mistaken belief induced by his representations, which he knew to be false, that he was free to marry, that she made the will in the belief that he was her lawful husband, and that she was never undeceived upon this point. It also appears that the will was executed about a month after the marriage, and, as we have said, that the parties lived together as husband and wife in closest as-

sociation until her death at the end of a year. Are these facts sufficient to have sustained a possible verdict by the jury invalidating the will or those portions of it by which Carson benefits? If they are, the order appealed from must be reversed.

We have been cited to but two cases involving substantially the same state of facts as that presented here. They are those of *Kenneth* v. *Abbott,* 4 Ves. Jr. 803, [31 Eng. Reprint, 416], and *Wilkinson* v. *Joughin,* L. R. 2 Eq. Cas. 319. In each, the facts were practically identical with those of the present case, and in each a bequest in favor of the supposed spouse was held void for his or her deceit. As authorities to the contrary, we are cited by counsel for Carson to *Moore* v. *Heineke,* 119 Ala. 627, [24 South. 374] ; *In re Will of Donnely,* 68 Iowa, 126, [26 N. W. 23] ; *Smith* v. *Diggs,* 128 Md. 394, [97 Atl. 712] ; *In re Dries' Will,* 69 N. J. Eq. 475, [55 Atl. 814] ; *Taylor* v. *Higgs,* 202 N. Y. 65, [95 N. E. 30] ; *Meluish* v. *Milton,* L. R. 3 Ch. Div. 27, and *Rishton* v. *Cobb,* 5 Mylne & C. 145, [41 Eng. Reprint, 326]. But in every one of these cases, with the exception of the last, there was either an entire lack of evidence that the deceased spouse was unaware of the true state of facts or else it affirmatively appeared that he or she knew what it was; in other words, it did not appear that there had been any deceit. This, of course, distinguishes these cases at once from the present. In fact, it is fairly implied in all that the bequests would have been void if the facts had been as the contestants claim they are here, and this is directly said in several of them. In the last case, that of *Rishton* v. *Cobb,* a bequest to a woman to whom the testator had paid court and made a proposal of marriage which had been refused was held valid, although unknown to the testator she was not a single woman. The difference between such a case and the present is evident without discussion.

[4] The weight of authority, then, is distinctly in favor of the sufficiency of the contestants' evidence to avoid a nonsuit, and such also we think is the rational view. The gross fraud upon the testatrix is, of course, apparent. According to the evidence, she was seduced by a marital adventurer into a marriage with him which was no marriage in the eyes of the law, because of the fact, which he concealed from her, that he

had already at least one, if not more, spouses, legal and illegal, who were still living and undivorced. There can be no question, also, that if the bequest to Carson were the direct fruit of such fraud, it is void. The only question in the case, assuming the contestants' evidence to be true, as we must, is, was the bequest in fact the fruit of the fraud. This is a question of fact which it was for the jury to determine, and unless it can be said that the jury could have reasonably reached but one conclusion concerning it, and that was that the bequest to Carson was not the direct fruit of his fraud, the evidence was sufficient to prevent a nonsuit.

[5] Now, a case can be imagined where, nothing more appearing than that the testatrix had been deceived into a void marriage and had never been undeceived, it might fairly be said that a conclusion that such deceit had affected a bequest to the supposed husband would not be warranted. If, for example, the parties had lived happily together for twenty years, it would be difficult to say that the wife's bequest to her supposed husband was founded on her supposed legal relation with him and not primarily on their long and intimate association. It might well be that if she were undeceived at the end of that time, her feeling would be, not one of resentment at the fraud upon her, but of thankfulness that she had been deceived into so many years of happiness. But, on the other hand, a case can easily be imagined where the reverse would be true. If in this case the will had been made immediately after marriage and the testatrix had then died within a few days, the conclusion would be well-nigh irresistible, in the absence of some peculiar circumstance, that the will was founded on the supposed legal relation into which the testatrix had been deceived into believing she was entering. Between these two extreme cases come those wherein it cannot be said that either one conclusion or the other is wholly unreasonable, and in those cases the determination of the fact is for the jury. Of that sort is the present.

We are not unmindful of the fact that the contestants offered no evidence other than that the testatrix had been tricked into the marriage; that in particular they did not offer any direct evidence that the inducing reason in her mind for her bequest to Carson was her belief that he was

her legal husband, and that the bequest would not have been made except for that belief. But such direct evidence is not necessary, and not improbably could not possibly be had. It is not an unreasonable inference from the fact that she had been so recently married when the will was made, that she left the bulk of her estate to Carson because she believed he was her lawful husband and would not have so left it if she had believed otherwise. Such inference, of course, was subject to being strengthened or weakened by evidence of other circumstances throwing light upon the matter, such as the views of the testatrix upon the sanctity of marriage, her harmonious or other relations with Carson, and the strength of her affection for him. But in the absence of such circumstances the inference mentioned is yet not an unreasonable one from the facts that appear. Our conclusion, therefore, is that the order of nonsuit should not have been made.

[6] The conclusion so reached required a consideration of the rulings of the trial judge refusing the contestants leave to file their amended petition and refusing to permit the introduction of certain evidence by them. As to the amended petition, it stated essentially the same matters as the original. The only difference in substance was as to the number of marriages Carson had gone through with prior to the one with the testatrix, the amended petition alleging several instead of one. The reasons for refusing leave to file it do not appear, and the claim of respondent is that the matter was one within the discretion of the court. This is true, but the discretion exercised must be a reasonable one. It has been said time and again in this state that, in the interest of justice and in order that every case may so far as possible be determined upon its real facts, the amendment of pleadings to accord with the claimed facts should be freely allowed unless good reason to the contrary appears. No such circumstances as inexcusable delay on the part of the contestants or their taking the adverse party by surprise appear here, and in the absence of some such circumstance we can see no reason whatever why the contestants should not have been permitted to correct or amplify by amendment their allegations as to the previous marriages of Carson.

[7] As to the rulings upon evidence, at the very outset of the trial the contestants sought to introduce testimony of

statements made by the testatrix in conversations with others than Carson, evidencing her belief that her marriage to Carson was legal. The evidence was excluded. Later the contestants again sought to introduce such testimony and it was again excluded, the court announcing that it would admit no evidence of conversations with the testatrix, i. e., of statements by her, except on occasions when Carson was present, the court giving as his reason that statements of a deceased are not competent in a suit for fraud or undue influence, but are competent in a case of unsoundness of mind. The exclusion of the testimony was erroneous. [8] The rule is without exception, so far as occurs to us at the moment, that whenever the intention, feeling, belief, or other mental state of a person at a particular time, including his bodily feeling, is material to an issue under trial, evidence of such person's declarations at the time indicative of his then mental state are admissible in evidence. It is wholly immaterial whether such declarations were made in the presence of an adverse party to the litigation or not, or what the character of the litigation is. The sole tests are, is the intention, belief, or other mental state of the declarant at the time material to the issues under trial, and, does the declaration indicate what the declarant's intention, belief, or other mental state at the time was. (*Estate of Arnold,* 147 Cal. 583, [82 Pac. 252] ; *Adkins* v. *Brett, ante,* p. 252, [193 Pac. 251].) Of course, if, as is frequently the case and was the case here, the declarations include or are in the form of statements as to past events, the declarations are not competent as proof of such events, and if that is their only bearing, they are not admissible. This was in fact the only bearing of the declarations excluded in such cases as *In re Calkins,* 112 Cal. 296, [44 Pac. 577], and *Estate of Gregory,* 133 Cal. 131, [65 Pac. 315], referred to by counsel, and those decisions go upon that ground. In the subsequent case of *Estate of Arnold, supra,* certain declarations which did not bear on the testatrix's mental state were excluded for this reason, and others admitted which did. It is plain here that the belief of the testatrix at all times prior to her death that Carson was free to marry her and that their marriage was valid was material to the issues of the case. This being so, evidence of her declarations at any time indicating her then

belief to that effect was competent and should have been admitted.

The trial court did at first admit evidence of statements by the testatrix in Carson's presence that Carson had been married before and had been divorced, saying that the evidence was admissible only as against Carson. Later this evidence was stricken out and other evidence of similar import refused admission on the theory apparently that it was not competent as against the beneficiaries under the will other than Carson, and not being competent as against them was not admissible at all. There are two answers to this. In the first place, as we have said, the other beneficiaries were not in fact interested parties. The cause was one really between Carson alone and the contestants. In the second place, the declarations, while wholly incompetent to prove the matters related and in fact not introduced for that purpose, were indicative of what the testatrix believed the facts were, and were, as we have said, competent to show that belief, both as against Carson and as against anybody else. Nor was it necessary that the declarations be made in the presence of Carson or any other party to the litigation. They were not sought to be introduced as admissions, but as evidence of the testatrix's belief, and for that purpose were clearly competent.

[9] The court also excluded all evidence of statements by Carson to the testatrix as to what his previous matrimonial experiences had been. Some of the evidence so excluded was even as to statements made at the very moment of their marriage. Upon what possible theory such evidence was excluded, we are at a loss to understand. The claim of the contestants was essentially that Carson had deceived the testatrix by lying to her. How they could be expected to prove that he had lied to her except by evidence of lying statements by him, we do not see. Such statements are not hearsay. They are not introduced to prove the truth of the matters stated or narrated in them. On the contrary, the position of the contestants, who were offering the evidence, was that the statements were false. The making of false statements by Carson was an essential fact, which the contestants were entitled to prove, just as much as they were entitled to prove any material fact in the case. That it was a verbal fact, an utterance by someone, does not prevent its being proved, and

the only way of proving it is by testimony of someone who heard it. It is also immaterial when these false statements by Carson to the testatrix were made, whether before or after the making of the will. The alleged deception by Carson was one extending to the death of the testatrix, and evidence of this deception at all times to the end was material.

[10] Another inexplicable line of rulings was one whereby the contestants were not permitted to examine Carson as to his previous marriages. The court even refused to permit a question of Carson as to whether he did not know when he married the testatrix that a former wife of his was living and this on the court's own motion and without any objection to the question being made by counsel. The impropriety of such rulings is beyond argument and we can conceive of no reasonable excuse for them. The court's attention was specifically called to section 2055 of the Code of Civil Procedure, adopted in 1917 (Stats. 1917, p. 58), which expressly permits of just such an examination of an adverse party. Furthermore, the section is but declaratory of a most elementary rule of daily application in the trial of cases. The rulings were nothing less than a flagrant denial of a common, everyday right of every litigant.

The court also excluded evidence that shortly after her marriage the testatrix transferred her bank account into the joint names of herself and Carson. The rejection of this evidence was not particularly prejudicial, but we think it must be evident that in a case of this sort where one of the vital questions is whether the bequest to Carson was induced by and based upon the belief of the testatrix that he was her lawful husband, or upon her affection for him independently of that belief, any evidence throwing light upon the relations of the parties, or upon her feelings toward him would have some bearing, and that very considerable latitude of examination should be permitted.

[11] The contestants also make the point that even if the testatrix knew the actual facts with regard to Carson, but mistakenly believed that he was free to marry, such mistaken belief alone would vitiate the will. This, of course, cannot be true. Mere mistake, which does not in effect show a want of execution of the will or, what is the same thing, a want of testamentary intent as to a portion of it, is not a ground of contest. (Code Civ. Proc., sec. 1312; *Estate of Benton*, 131

Cal. 472, [63 Pac. 775]; 40 Cyc. 1143.) Furthermore, *In re Will of Donnely*, 68 Iowa, 126, [26 N. W. 23], the identical contention under discussion was presented and denied.

There are no other points which would seem to require consideration.

Judgment reversed.

Shaw, J., and Lawlor, J., concurred.