Cora B. CARPENTER et vir, Appellants,

v.

D. A. TINNEY et al., Appellees.

No. 11537.

Court of Civil Appeals of Texas.

Austin.

Oct. 18, 1967.

Rehearing Denied Nov. 8, 1967.

242

Charles E. Wallace, Waco, for appellants.

Warden Terry, San Saba, Lee & Lee, Jack Lee. Mason, for appellees.

O'QUINN, Justice.

This lawsuit, originally brought in the County Court of San Saba County, contests the will of Frankie Tinney. In her will Mrs. Tinney sought to leave all her property, except for minor cash bequests, to two of her four children. To the other two children and to her husband, who was living when she made the will, Mrs. Tinney left $5 each.

One of the children, Cora (Tinney) Carpenter, joined by her husband, filed a contest in county court in July, 1962, naming as defendants her three brothers, who were the other three children of the testatrix. One brother was sued individually and as the designated executor of their mother's will. The county court held against the contestants, and they appealed to district court. From an adverse judgment entered November 11, 1966, in district court, contestants bring this appeal.

Frankie Tinney was the wife of W. I. Tinney, a stock farmer, at Cherokee. Together they owned about 400 acres of land, in two separate tracts, and cattle. W. I. Tinney died in February, 1959, after which Mrs. Tinney filed application to probate her husband's "lost" will, under which she claimed to be the sole beneficiary. A contest was brought, and on appeal this Court denied probate of the proffered will in 1963. Tinney v. Carpenter, 369 S.W.2d 440, Tex.Civ.App., Austin, writ ref. n. r. e.

While her husband was still living, Frankie Tinney executed a will dated May 8, 1958. Under this will she bequeathed $5 to her husband and $5 each to her daughter, Cora, and to her son Clifton. All her "other estate, real, personal and mixed" she left to her "two sons, Dor and Milton." She appointed Dor independent executor of her estate.

The contest attacked the will on the grounds that Frankie Tinney was of unsound mind and incapable of making a will, that Dor and Milton exercised undue influence over their mother, and that the will

was the result of "a fraud or mistake." This last claim was based on testimony that at the time Mrs. Tinney made her will, and on occasions afterwards, she said that her husband had made a will leaving his property to Cora and Clifton, to the exclusion of the other two children, and that she wanted to equalize distribution of their property by leaving all of her property to Dor and Milton, to the exclusion of the two children favored by her husband. It was not true that Mr. Tinney had left his property to two children, leaving out the other two children, and contestants contend that if Mrs. Tinney had not been mistaken, she would not have left her property as she did to only two of her four children.

In answer to special issue No. 1, the jury found that Frankie Tinney had testamentary capacity when she made her will. The trial court refused to submit an issue on undue influence. Contestants moved for judgment non obstante veredicto, and the trial court overruled the motion. Motion for new trial was also overruled.

■ Appellants predicate this appeal on seven points of error. Points four, five, and six, challenging evidentiary support of the jury's finding as to testamentary capacity, are not briefed. These points are therefore waived and we overrule them without discussion. Burrell v. VanLoh, 404 S.W.2d 860, 861–862, Tex.Civ.App., Fort Worth, no writ, and authorities cited.

Points one and two are briefed together, under which appellants contend the trial court should have entered judgment for appellants because the undisputed evidence shows the true intention of Frankie Tinney was that all four of her children receive equal parts of the property she and her husband owned.

Under point three appellants attack the refusal of the trial court to submit an issue on undue influence. Point seven, appellant's remaining contention, asserts that the trial court erred in admitting in evidence the deposition of Dr. G. L. Gray because proper predicate for its introduction was not laid.

We overrule points one and two based on the contention that the true intention of Frankie Tinney was to effect equal distribution of her property and her husband's property among the four children. To hold as appellants urge, we would need to find that Frankie Tinney made her will under a mistake of fact and that the court is therefore privileged to reform her will. We believe the law to be contrary to this contention.

Appellants confess in their brief that they have been unable to find cases decided by courts of this State involving mistake such as pleaded in this cause. Appellants cite cases holding that a will may be attacked on the ground that its execution was induced by a fraudulent promise to do something in the future. "If a will can be set aside," appellants argue, "based on a promise, then by the same reasoning a will ought to be set aside when it is uncontroverted that the will is based on a false belief in a given state of facts."

■ We are unable to accept this proposition, either on the basis that mistake of fact is analogous to a fraudulent promise, or that a mistake of fact, not induced by fraud or undue influence, licenses this Court to rewrite Frankie Tinney's will.

Testimony was offered through a neighbor that Mrs. Tinney said at the time she was making her will, and at other times later, that because her husband had made a will leaving his property to two children she wanted to even the distribution of their property by leaving her estate to the two children left out of her husband's will.

Frankie Tinney made her will in 1958, some eight months before her husband's death in February, 1959. She died nearly two years after his death and about eighteen months after she had undertaken to probate her husband's "lost" will under which she was his sole heir. It appears she did write a doctor in Temple, where her husband had been in a hospital for some time

before his death, inquiring as to whether Mr. Tinney had signed any papers while there.

In so far as the record of this case discloses, Mrs. Tinney never learned anything to confirm the belief, if she ever had it, that her husband left his property to two children instead of all four. There is no evidence that Frankie Tinney ever mentioned changing her will in the light of facts, known to her after her husband's death, contrary to her earlier belief that he favored two children over the others. Frankie Tinney died early in 1961 with her will of May 8, 1958, unchanged.

In American Jurisprudence it is said that validity of a will or any part of it is not affected by mistake of fact or law inducing execution of the will, unless fraud or undue influence was perpetrated upon the testator. 57 Am.Jur., Wills, sec. 375, p. 272.

■ Generally a mistake of fact or law, in the absence of fraud or undue influence, will not defeat the probate of a will, even though the testator would or might have made a different will if there had been no such mistake inducing the testator to make the will. 41 L.R.A.,N.S., 1126, 1129, col. 1, and authorities cited. It is also the general rule that courts have no right to vary or modify the terms of a will or to reform it even on grounds of mistake. 95 C.J.S. Wills § 586, p. 713.

In Holmes v. Campbell College, 87 Kan. 597, 125 P. 25, 41 L.R.A.,N.S., 1126, the testatrix, after making specific bequests, left the residue of her estate to Campbell College. External evidence was offered to show that the testatrix was grossly mistaken as to the exent of her estate, believing that the specific bequests of $7,715 would practically exhaust her property, when in fact the residue amounted to more than $17,000.

The court found that "it was only because of such belief that she allowed the provision to stand, giving the residue to the college. If she had known its real value, she would have left it to her heirs."

The court held, "The provision cannot be stricken from the will, however, merely because it was the result of a mistake of fact on her part. This would be in effect to reform the will, and the court possesses no such power."

In Johnson v. Moore, 223 S.W.2d 325, Tex.Civ.App., Austin, writ ref., this Court held that property forgotten or overlooked by the testator, or property he did not know he owned, may be devised under a residuary clause, regardless of whether the testator knew or believed he had title to the property.

■ It has been held that if the testator labors under no mistake in identity of the document executed, a mistake of fact or law, there being no fraud or undue influence, will not defeat probate of a will. Re Gluckman, 87 N.J.Eq. 638, 101 A. 295, L.R.A.1918D, 742.

It has also been held that mistake by the maker of a will, in believing the person with whom the maker cohabited was a lawful spouse, will not vitiate a bequest to such person, although the marriage was in fact invalid. McDole v. Thurm, 276 Ill. 200, 114 N.E. 542, L.R.A.1917B, 1150; Re Carson's Estate, 184 Cal. 437, 194 P. 5, 17 A.L.R. 239; Texada v. Spence, 166 La. 1020, 118 So. 120, 62 A.L.R. 281.

■ We believe that if Frankie Tinney in truth believed when she made her will that she would have to leave her property to two of her children, instead of the four, because of an opposite provision in her husband's will, in order to make even distribution of the property owned by her and her husband, the opportunity to disabuse her mind of such mistaken belief was ample during the two years after her husband's death and before her own demise. We find no fraud or undue influence inducing any such belief. If it was merely a mistake of fact, this Court should not now undertake to reform a will that the maker let stand after she, through her action in probate court, demonstrated a correct understanding, or

at least a different understanding, of the disposition made by her husband of his property.

We hold that what Frankie Tinney as maker of her will did, and not what she meant or failed to do, is to be given effect under the facts of this case.

Under their third assignment, appellants attack the action of the trial court in refusing to submit an issue on undue influence. We overrule this point.

■ The burden of proving undue influence was upon appellants as contestants of the will. Rothermel v. Duncan, 369 S.W.2d 917 (Tex.1963).

Appellants raised the issue of undue influence in district court by their first supplemental petition under the allegation they "would show that the defendants D. A. Tinney and Thomas Milton Tinney exercised undue influence over the said Frances Tinney * * *"

■ Before a will may be set aside on the ground of undue influence the contestant must prove (1) existence and exertion of influence, (2) effective operation of the influence so as to subvert or overpower the mind of the testator at the time of execution of the will, and (3) execution of a will the maker would not have executed but for the influence. Rothermel v. Duncan, supra; Pearce v. Cross, 414 S.W.2d 457 (Tex.1967); Olds v. Trayler, 180 S.W.2d 511, Tex.Civ.App., Waco, writ ref.; Stewart v. Miller, 271. S.W. 311, Tex.Civ.App., Waco, writ ref.

Appellants as contestants of Frankie Tinney's will had the burden to introduce some tangible and satisfactory proof of the existence of each of the three elements of undue influence. Rothermel v. Duncan, supra; Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138.

No witness testified to any act or deed of either Dor or Milton showing or tending to show the exercise of influence on their mother, Frankie Tinney. Dor Tinney, a married man between the age of 45 and 50, lived at Big Lake, Texas, and was not shown to have more than occasional visits with his mother. Milton Tinney, a single man in the neighborhood of 50 years of age, had lived with his mother and father some fifteen to twenty years prior to his father's death in 1959. He continued to live with his mother after his father died.

Except for the fact that Milton lived with his parents and helped with the farm work, building fences and feeding cattle, there was no evidence that he exercised or sought to exercise any influence over his mother. In fact, the testimony was abundant that Frankie Tinney was a woman of independence and positive action. She and her husband, during the latter part of their married life, apparently did not get along in perfect harmony. Both were advanced in years at the time they died, Mr. Tinney being about 79 years old and Mrs. Tinney 72 years old. They had been married since about 1906.

When Frankie Tinney made her will in May, 1958, she drove with another woman, a neighbor, to San Saba and engaged an attorney to prepare the instrument. By her instructions, the will, after being typed, was mailed to the neighbor who delivered it in person to Mrs. Tinney. A short time afterwards Mrs. Tinney and the neighbor drove to Llano, where Mrs. Tinney executed the will in the office of a doctor who had attended the family and who treated Mrs. Tinney. There was evidence that the reason Mrs. Tinnney had the typed will mailed to her neighbor was because she wanted to avoid possibility of interception by her husband.

After her husband's death in 1959, the lawyer who had prepared Mrs. Tinney's will suggested she make a new will which she refused to do. When the neighbor was asked at the trial whether Mrs. Tinney "had a pretty strong mind of her own," the neighbor said, "She did what she thought was right, I guess, or what she wanted to."

The testimony was uncontradicted that Mrs. Tinney continued, after her husband's death, to manage the affairs of her stock farm and was actively in charge until her last illness prior to her death early in 1961. There was testimony, not disputed, that after Mr. Tinney's death, if a person wanted to conduct business with the Tinneys, that person talked to Frankie Tinney and not to Milton.

The rule is stated in American Jurisprudence that the law does not infer undue influence from the mere fact that one who is to profit by the will had an opportunity to impress his will upon the mind of the testator. It must appear that undue influence was actually exerted. 57 Am.Jur., Wills, sec. 387, p. 279.

Living as he did with his parents for a number of years, Milton obviously had the opportunity to impress his will upon the the mind of his mother. But there is no evidence that he ever tried to influence his mother. He was not present when instructions for preparation of the will were given and was not present when Mrs. Tinney signed the will. In fact, in so far as the record discloses, it may be assumed that Milton did not know his mother had made a will and knew nothing of its contents.

The trial court correctly refused to submit an issue on undue influence.

Appellants by their last assignment contend the trial court erred in admitting the deposition of Dr. G. L. Gray. We think the deposition was properly admitted and overrule the assignment of error.

Objection to admission of the deposition was made on the ground that proper predicate had not been laid. Appellants rely upon the rule approved by the Supreme Court in Houston Fire and Casualty Ins. Co. v. Brittian, 402 S.W.2d 509 (Tex.1966).

In that case the Supreme Court followed the rule of Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, in which it was said that under the settled law in this State the "testimony of a witness given at a former trial of the same case on substantially the same issues, and where there was opportunity for cross examination, may be reproduced where it is shown that the witness is dead * * * become insane, or *is physically unable to testify* * * *." (153 S.W.2d 681, 697, col. 1.) (Emphasis added).

The evidence resisted by appellants was the deposition, by written interrogatories, of Dr. Gray, taken by agreement of the parties while the case was in county court. The deposition was placed in evidence in the trial before the county court without objection.

Under Rule 213, Texas Rules of Civil Procedure, "Depositions may be read in evidence upon the trial of any suit in which they are taken * * *." Section 28, Texas Probate Code, provides for appeal to district court by persons aggrieved by actions of the county court. The trial in district court is de novo and is governed by the same rules as in other civil cases. In re Estate of Rosenfield, 371 S.W.2d 95, Tex.Civ.App., Dallas, no writ. Appeal to the district court is not a new suit. It is a continuation of the original contest commenced in county court. The deposition of Dr. Gray, taken and used in county court in this case, was admissible in district court, without the necessity of showing that the witness was physically unable to testify. Gray v. Bird, 380 S.W.2d 908, Tex.Civ. App., Tyler, writ ref., n.r.e.

The judgment of the district court is in all things affirmed.

Affirmed.