## GRANT v. DREYFUS.

### L. A. No. 323; April 9, 1898.

#### 52 Pac. 1074.

**Appeal.**—Verdict by a Jury on an Issue as to Whether an account-book on which plaintiff based his claim was one of original entry or a fraudulent fabrication is one of fact, and the verdict of a jury thereon will not be disturbed.

**Contract.**—A Newspaper Notice by a Keeper of a Pasture that he wanted every horse taken out as soon as possible, and, if not, the owner would be charged a certain amount per day, is sufficient to charge one who read the notice with the terms thereof, as under an implied contract.

**A Witness may be Asked to Examine His Account-book** to see whether it contains a statement of certain items, the entries having been made by another under his direction, as such testimony is not from memory refreshed by the book.

**Evidence.**—Where a Party was Notified to Produce a Letter sent him, a longhand copy thereof, shown to be such, is admissible, although not a fac-simile.

**Leases.**—In an Action by a Lessee on an Account for Pasturing stock belonging to lessor's son, evidence of the removal from the premises and sale by him of certain materials, which evidence related to the breach of a covenant of the lease, was inadmissible, there being no issue concerning any breach.

**Appeal.**—Where the Evidence as to Later Items in an Account not claimed to be barred by limitation justified a verdict for the amount rendered, the question whether earlier items were barred will not be considered.

**Trial—Instructions.**—Plaintiff, Being Under Contract to Pasture defendant's stock for an indeterminate period, notified him to remove his horses, or he would be charged a certain amount. Plaintiff's account charged both for horses and cows, but the former

charges were more than the verdict rendered in an action on the account. Held, that an instruction that defendant was notified to remove his stock, though too broad, was not injurious.

Trial—Instructions.—Under Code of Civil Procedure, section 1963, declaring a presumption that a letter duly directed and mailed was received in the regular course of mail, an instruction in the latter language is not objectionable as meaning that the jury were to accept as a fact that the letter had been received.

Lease.—Where a Lessee Denied That He Agreed Before making the lease to pasture horses belonging to the lessor's son free in consideration of their use, and the evidence tended to show that all the conditions of the lease were entered into prior to its execution, in an action by the lessee for pasturage, an instruction that an agreement reduced to writing is conclusively presumed to contain all its terms, in the absence of fraud or mistake, was applicable.

APPEAL from Superior Court, Santa Barbara County.

Action by Gerard Grant against Louis G. Dreyfus on an account. From a judgment for plaintiff, defendant appeals. Affirmed.

Richards & Carrier for appellant; B. F. Thomas for respondent.

CHIPMAN, C.—Action to recover a balance of $1,773.94, alleged to be due to plaintiff from defendant on an account for wood, for services, and for pasturage. Defendant pleaded the general denial, the two year statute of limitations, and affirmatively set up an agreement that the stock for which pasturage was charged was to be pastured free in consideration of their use. The pleadings are verified. Defendants also offered to confess judgment for $147.79. The trial was by jury, and plaintiff had a verdict for $598.89. The appeal is from the judgment and is presented by bill of exceptions.

1. Defendant claims that the evidence is insufficient to support the verdict and judgment. Most of his brief is devoted to the claim that the account-book of plaintiff is not a book of original entry, but is a fabrication. The proof of plaintiff's case rested upon the integrity of the entries in this book. There was practically no evidence independent of the book itself in support of plaintiff's claim. The items of charge in the book begin as early as December 1, 1890, and run down to June, 1895. Defendant introduced certain dealers in stationery to prove by a cost mark found in the book that it

came from their store, and could not have been bought by plaintiff earlier than August, 1893, which, if accepted by the jury as true, would have wholly discredited and impeached plaintiff's evidence. Plaintiff and his son disagreed as to which of the two purchased the book, and neither of them could remember from whom it was bought, but they both testified that the book was purchased at the time the accounts were opened, and that the entries were made at the time of the various transactions, and were correct; and there was some corroborating evidence. The facts were submitted to the jury, and we cannot now undertake to pass upon the conclusion reached.

Defendant endeavors to show that by applying the statute of limitations to the items prior to June 1, 1893, the verdict is in excess of the items proved even by the book. The account shows items subsequent to June 1, 1893, amounting to $1,339.29. Defendant made tender of $147.89. The jury might not only have rejected the items barred by statute, but greatly reduced the total of the other items, and there would have remained enough to account for the verdict. We do not see how this court can revise these figures.

2. Certain errors are assigned in admitting and rejecting evidence.

(a) Plaintiff published the following notice in the "Daily Independent" of March 30, 1894:

### "Notice.

"G. Grant wants every horse taken out of Eagle canyon pasturage as quick as possible, and, if not, the owner will be charged fifty cents a day.

"G. GRANT."

This notice was published daily until April 9th, inclusive. Defendant admits that he saw it. Plaintiff wrote defendant April 5th, requesting him to take his horses out of the pasture, or it would cost him fifty cents per day from April 1st. This letter was addressed to defendant, and was mailed, postpaid, on the day after its date. Defendant denies receiving it. The objection to the published notice was that it was too indefinite to be the basis of an implied contract to pay the price named, that no time was fixed for removing the horses, and the notice was not addressed to defendant. We think the notice conveyed very clearly to anyone who read

it that plaintiff desired the removal of all horses at once, and, unless removed, a charge of fifty cents per day would be made. It was not necessary, to make it effective upon defendant, that a precise date for removing the animals should be given, or a precise date from which the charge of fifty cents per day would be made, nor that it should be specially addressed to defendant. Others had stock in pasture with plaintiff. It is in evidence that the season was very dry, and the feed short. The verdict of the jury shows that they did not allow all the charges from April 1, 1893. The jury must have deducted a large sum from these items, based upon pasturage after April 1st. We see no error in admitting this evidence.

(b) Plaintiff was asked to examine page 45 of his account-book, "to see whether it contains a statement of the wood sold to defendant, for hay," etc. The objection made was that the witness could not refresh his memory by a writing not made by himself, it appearing that his son, and not he, made the entries. It was in evidence that plaintiff's son made the entries under plaintiff's direction. Besides, plaintiff did not testify from memory refreshed by the book.

(c) Objection was made to the copy of the letter or notice of April 5th, mailed to defendant by plaintiff, because no proper foundation was laid for its admission. It appeared that plaintiff's son wrote and mailed the letter. He copied it in the account-book, and defendant had been called upon to produce the letter sent him. We do not see why a longhand copy of a letter may not serve the same purpose as letter-press copies, which latter are admissible. It might not be as satisfactory, but, if it is shown to be a copy, there can be no objection to it because not a fac-simile. Farmers seldom keep letter-presses, and, unless a copy such as this is admissible, they could not protect themselves by keeping copies of letters in the old-fashioned way.

(d) Objection was made by defendant to certain questions relating to the removal from the ranch by plaintiff of certain fence panels, and their sale by him. Plaintiff was lessee of a ranch formerly owned by defendant's father, then deceased, and now the property of his surviving widow. This evidence had some relation to the question of breach of covenants of the lease, as much other testimony also did; all of which it seems to us, was wholly irrelevant, whether introduced by plaintiff or defendant. There was no issue in the pleadings

concerning any breach of the lease which could relate to the removal of fence panels claimed by plaintiff. At the same time we are not able to discover that defendant was injured by this evidence, and we cannot see wherein it could have had any influence one way or another upon the jury. There are some other errors assigned in rulings upon the admission of evidence for plaintiff, but we find none calling for further notice.

3. The court gave five separate instructions at the request of plaintiff, to all of which defendant objected, and now urges error as to two of them. Instruction numbered 3 is specially assailed as error. It is as follows: "I charge you also, as a matter of law, that, where stock are pastured without any agreement as to length of time, they shall remain in pasture, or as to time when the pasturage should be paid, that the said contract of pasturage is a continuous contract, and the statute of limitations would not bar an action for the price of such pasturage until two years after the stock are removed." Defendant claims that in a contract to render services such as pasturage, where there are no predetermined limits as to time, each day gives a right of action, and plaintiff might have sued defendant while the animals were yet in pasture, and at the utmost the contract would be presumed to mature at the end of each month, the rate of compensation being ordinarily reckoned by the month, and the duration of contracts being determined by the time for payment; citing Davis v. Gorton, 16 N. Y. 255, 69 Am. Dec. 694; In re Gardiner, 103 N. Y. 533, 57 Am. Rep. 768, 9 N. E. 306. But we do not pass upon that question, for the reason that the evidence before the jury of items in no wise affected by the statute of limitations or claimed to be so affected, justified a verdict for not less than the amount given.

4. Instruction No. 4 informed the jury that plaintiff notified the defendant to remove his "stock," etc., whereas the notice related alone to "horses." The account charged both for horses and cows at fifty cents per day, and appellant claims that this made a difference of $170. But the account for horses alone amounted to nearly $1,000. We cannot see that appellant was injured, even if we assume that the instruction was broader than the notice. The instruction also stated that "a letter duly directed and stamped and mailed is presumed to have been received in the regular course

of mail." Appellant claims that this instruction in effect conveyed to the jury the meaning "that they were to accept as a fact that the letter had been received." We do not think that the instruction is susceptible of this meaning. Section 1963 of the Code of Civil Procedure declares that certain presumptions are satisfactory if uncontradicted, one of which is (subdivision 24) "that a letter duly directed and mailed was received in the regular course of the mail." The instruction is in the form of the statute, and, if the defendant would have had the jury determine whether the presumption had been overcome by any evidence on his part, he should have requested an instruction to that effect.

5. The fifth instruction was that an agreement reduced to writing is conclusively presumed to contain all its terms, in the absence of fraud or mistake. It is claimed that, while good enough law in the abstract, it had no application to the case. Appellant claimed that respondent agreed with Isadore Dreyfus, from whom respondent leased, to pasture the stock for their use. The written lease is in evidence, and took effect November 1, 1891. The preliminary talk as to its conditions was in May, 1891, in which month Isadore Dreyfus departed for Europe, and there died. There was evidence tending to show that there were no conditions of the lease entered into after its execution; they were all prior thereto. Under the pleadings and evidence it would seem that the instruction had some application to the case. Respondent denied any agreement to pasture appellant's animals for their use. The fact was at issue, and it seems to us quite improbable that Mr. Dreyfus would have omitted this agreement from the lease if such agreement existed at the time the lease was made. If it was a condition of the lease, it should have found its way into the written document, and, not having done so, the instruction seems to us appropriate as well as good law. Other assignments of error do not appear to call for notice. It is recommended that the judgment be affirmed.

We concur: Searls, C.; Haynes, C.

PER CURIAM—For the reasons given in the foregoing opinion the judgment is affirmed.