[Civ. No. 803.   Third Appellate District.—May 24, 1911.]

A. H. CARPENTER, Appellant, v. A. H. ASHLEY, Respondent.

ACTION FOR SLANDER—UNPRIVILEGED COMMUNICATION—LAW OF CASE—INSTRUCTIONS — FINDING — ABSENCE OF PREJUDICIAL ERROR.—It is held to be the law of the case in this action for slander that the complaint shows upon its face an unprivileged communication, as decided upon the former appeal, and that the instructions of the court on the second trial did not ignore the doctrine of the law of the case. But as issue was taken upon the words charged, which was found in favor of the defendant, the only question is whether

there is any prejudicial error in the record requiring a reversal of the judgment in favor of the defendant, which it is held does not appear.

ID.—PROOF OF PRIVILEGED WORDS — INSTRUCTION — INSTRUCTIONS FOR PLAINTIFF NOT WEAKENED.—Where it appeared from plaintiff's testimony on the witness-stand that some of the alleged slanderous words were uttered in a criminal prosecution against the plaintiff for subornation of perjury, in the speech of the district attorney to the grand jury, the court properly instructed the jury that words so spoken were privileged. This instruction could not be understood by the jury as weakening the instructions as to unprivileged words.

ID.—SUFFICIENCY OF PROOF OF UNPRIVILEGED WORDS.—It was not necessary that plaintiff should prove all of the slanderous and unprivileged words charged to have been spoken by the defendant; but it would be sufficient to prove substantially one or more of the statements of slanderous words contained in the complaint.

ID.—NEWSPAPER ARTICLES AS TO WORDS SPOKEN NOT ADMISSIBLE—EVIDENCE OF REPORTER —REFRESHMENT OF MEMORY FROM MEMORANDUM.—Newspaper articles containing a report of one of the cases in which the alleged words are said to have been spoken were not admissible in evidence; but the reporter may refresh his memory from a memorandum made by himself, and testify from memory as to the words spoken.

ID.—PROOF OF WORDS NOT CHARGED INADMISSIBLE TO SHOW MALICE—IMPLIED MALICE.—No proof of other words not charged is admissible to show malice, which is implied from the unprivileged words charged, and need not be proved.

ID.—INDICTMENT AGAINST PLAINTIFF—ATTACK BY PLAINTIFF FOR FRAUD NOT PERMISSIBLE.—Where the defendant introduced in evidence the indictment against the plaintiff in connection with proof that words spoken against plaintiff by defendant as district attorney were privileged, the defendant was properly not permitted to show that the indictment was fictitious and fraudulent and obtained by defendant through felonious means.

ID.—EVIDENCE OF DEFENDANT—OFFICIAL REPORT OF TRIAL WHERE WORDS WERE CHARGED AS SPOKEN—DEATH OF REPORTER—REFRESHMENT OF MEMORY.—Where defendant, as a witness in his own behalf, was asked to narrate the colloquy occurring between him and plaintiff in the collateral prosecution, and testified that he directed the official reporter to take down the evidence and all proceedings therein, and that he had examined the transcription and knew it to be correct, where the official reporter was dead, the court properly ruled that the district attorney might refresh his memory therefrom and testify in accordance with his memory, though the transcript itself was not admissible as independent evidence.

ID.—JUDGMENT FOR DISMISSAL OF SLANDER SUIT — UNDERTAKING FOR COSTS—ATTORNEYS' FEES.—Where the judgment was for defendant for dismissal of the slander suit, in which plaintiff had given security for costs, the court properly allowed $100 as counsel fees for the defendant, under the libel and slander act.

ID.—CONSTITUTIONALITY OF LIBEL AND SLANDER ACT.—The libel and slander act having been passed prior to the codes and to the new constitution, it was not affected thereby, and it is sufficient that it was constitutional when originally enacted.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

Nicol & Orr, G. F. McNoble, and C. L. Neumiller, for Respondent.

CHIPMAN, P. J.—Action for slander. Plaintiff complained that defendant, on January 23 and 24, 1901, spoke and published certain defamatory words of and concerning plaintiff, in the presence and hearing of divers persons, to his damage in the sum of $10,000.

Defendant denied, in his answer, that he uttered the words attributed to him or any words other than as defendant set forth; that they were spoken under circumstances which he described and while defendant, as district attorney, was prosecuting one Ennis in a justice's court, whom plaintiff was defending, and that the language used by defendant had its origin in connection with certain testimony being given by one Stennett, whom defendant accused of committing perjury and whom he declared his intention to have arrested and prosecuted therefor; that the language addressed to plaintiff and which he used of and concerning him was entirely different from that attributed to him by plaintiff, and was not intended to and did not charge plaintiff with having committed the crime involved in the alleged slanderous words, and that what defendant did say was true and was spoken in the discharge of his duty as district attorney, and was privileged.

This is the second trial of the action by a jury, in both of which defendant had the verdict. The judgment on the verdict at the first trial was reversed on appeal, the supreme court holding, against the view taken by the trial court in the instructions given and refused at that trial, that the words alleged to have been uttered by defendant were not privileged. (*Carpenter* v. *Ashley*, 148 Cal. 422, [83 Pac. 444].)

The issues at the second trial were the same as at the first trial, and met like fate at the hands of the jury upon sufficient evidence. Unless, therefore, the trial court erred either in its instructions to the jury or its refusal to give such as were asked by plaintiff, or in its rulings upon the evidence, the judgment must stand.

The burden of appellant's complaint of the instructions is that the court ignored the law of the case as laid down by the supreme court on the first appeal, namely, that under the disclosed facts the words alleged to have been spoken were not privileged. Plaintiff requested twenty-eight instructions. The court gave eleven of these as requested and seven after some modification not pointed out nor complained of. In at least two of these instructions—numbered 6 and 15—the court distinctly and unequivocally told the jury that the words spoken by defendant were not privileged, and, in No. 15, the court stated "that plaintiff is entitled to a verdict against the defendant without proof of special damage," if the jury "believe from the evidence that the defendant spoke or uttered the words." Instruction No. 16 was refused probably, and certainly might well have been, because given in Nos. 6 and 15. For like reason the court properly refused No. 22. The instructions given were favorable to plaintiff in all respects and covered every phase of the case substantially as requested by plaintiff.

In the thirty-first instruction the court briefly referred to the issues presented by the pleadings, in course of which the court stated, among other things, that the defendant "claims that such publication [the words alleged to have been spoken] was privileged." Complaint is made of this. But we do not see that harm could have thus come to plaintiff's case, for it was but stating what defendant claimed and what the court

had distinctly told the jury was no defense because not privileged.

Instructions numbered 32 and 33 had reference only to the duty of the district attorney, upon the discovery of crime or upon his having reasonable cause for suspecting that a crime has been committed amounting to felony, to bring the same to the attention of the grand jury. It appeared from plaintiff's testimony, when on the witness-stand, that some of the slanderous words complained of were spoken by defendant when he was addressing the jury at the trial of the *People* v. *A. H. Carpenter* (plaintiff here) on the charge of perjury. The instruction was drawn doubtless to inform the jury that words spoken under such circumstances were privileged. These instructions could not, we think, have been understood by the jury as in any wise weakening the force of the instructions given with reference to the words which were spoken at the trial of the *People* v. *Ennis*, which were the words referred to in the complaint.

Instructions 12, 14 and 24 "are," as stated in appellant's brief, "to the effect that where the words are actionable *per se*, the plaintiff is entitled to recover without proof of special damage."

The court, in its instruction 5, given at plaintiff's request, told the jury that the words charged in the complaint "are actionable in themselves" and that "express malice need not be proved." The point made by appellant seems to have been covered, except that the court used the words "actionable in themselves" instead of "actionable *per se*." It is altogether probable that the jury would not have been further enlightened by giving the language in Latin.

Instruction 23 was that if the jury believed that "defendant spoke of plaintiff, in the presence of others, any of the slanderous words charged in the complaint, the import of which would be to charge the plaintiff with the crime of perjury or subornation of perjury, the plaintiff is entitled to a verdict in his favor, unless the defendant has established the truth of the slanderous words so proved to have been spoken by him and charged in the complaint." If the instructions given had left room for doubt as to whether it was necessary for plaintiff to show that all the alleged slanderous words had been spoken by defendant before plaintiff could recover, there

would be force in the claim that this instruction should have been given. But the court had instructed the jury, in No. 9, that "it is not necessary to prove all the words that are charged to have been spoken. It is sufficient to prove, substantially, the words in some one or more of the statements of the slanderous words contained in the complaint." In the instruction No. 8, the jury were told "that when one person utters words concerning another, which, in their ordinary and common significance impute the crime of perjury, or subornation of perjury, it is presumed it was in that sense they were used and understood by the bystanders who heard them," etc.

Instruction numbered 25 was fully covered in other instructions.

There are numerous assignments of error in ruling upon evidence offered. Some of these do not call for notice and none of them import prejudice if error be conceded. We will notice such as appear to call for remark.

Witness Haynes, for plaintiff, had testified to the words spoken as charged and was then asked, "What else did you hear him say outside of these direct charges of perjury?" An objection was sustained, but the witness stated that he remembered nothing further that was said.

Witness Davis, for plaintiff, was a newspaper reporter and reported to his paper, the "Evening Mail," one of the cases where the alleged words are said to have been spoken. Plaintiff undertook to prove by the witness that he wrote the article published in that paper and to identify the report as plaintiff's exhibit 1. Plaintiff tried in several ways to get this report before the jury but objection was sustained and finally the court said to counsel: "I call your attention again to the ruling of the supreme court in this case (on the first appeal), and I do not want to be called upon to continue repeating my rulings. . . . I don't want you to undertake to do indirectly what the supreme court has said you cannot do directly." The supreme court had ruled that these newspaper articles were inadmissible. The witness testified that he considered his notes made at the time a memorandum but did not so consider the full report written out afterward. He was allowed to refresh his memory from looking over the report, but was not allowed to read the report. He then

stated what he remembered. We think the ruling was correct.

Plaintiff was a witness in his own behalf and apparently conducted his own examination. He was asked what he heard defendant say of him at the Ennis trial and answered: "He addressed you and he said that you are worse than Stennett, for"—"defendant's counsel moved to strike out the answer on the ground that it is no part of the actionable words in the complaint." The motion was allowed. Plaintiff claims that the evidence was intended to show malice. So far as the element of malice was concerned, it was implied by the language charged and the court so instructed the jury and that it was not necessary to prove malice. The witness proceeded to testify very minutely to all that he heard said which formed part of the charge made in the complaint.

It was not erroneous to strike out the further answer of the witness: "He said in the justice's court of Stockton township that I should be disbarred."

Witness Carpenter had testified in chief that defendant had said to him: "You have sworn to either thirteen or sixteen lies and have made the Stennetts perjurers." On cross-examination defendant interrogated witness to show that this occurred at his trial under an indictment for perjury which defendant was prosecuting. Defendant's counsel stated that his purpose was to show the circumstances under which the statements were made by defendant. It was, perhaps, unnecessary to introduce the indictment to accomplish defendant's purpose, but its introduction could not have made prejudicial what in briefer form might have been brought to the jury's attention.

On redirect, witness Carpenter put to himself a series of questions the purpose of which he said was to show that the indictment "was fictitious and fraudulent and obtained by defendant through felonious means." Of course, such inquiry was not pertinent.

Defendant Ashley was a witness in his own behalf. He was asked to narrate the colloquy occurring between him and plaintiff during which the alleged slanderous words, or whatever they were, were uttered. He testified that he, as district attorney, directed the official reporter, E. E. Hood, to take down the testimony of the witnesses and what occurred dur-

ing the hearing, and that Hood did take down all the proceedings and write them out soon thereafter, and that he, the witness, examined the transcription and that it was a true and correct statement of the proceedings. "The Court: Do you know the transcription made by him under your direction, handed to you, to be a true and correct statement of the proceedings that were taken? A. I do. The Court: I think Mr. Ashley may refresh his memory from it. I don't think they are admissible as independent evidence." Mr. Hood was dead at the time of the present trial. The ruling was not error.

A cost bill was filed by defendant amounting to $513.90. Among the items was a charge of $100, counsel fees. This and some other items were objected to by plaintiff. The court taxed defendant's costs at $317. The only complaint now made is that the allowance of attorneys' fees was unconstitutional; citing *Builders' Supply Depot* v. *O'Connor,* 150 Cal. 265, [119 Am. St. Rep. 193, 88 Pac. 982, 17 L. R. A., N. S., 909]. That was a case involving the constitutionality of the mechanic's lien law which gives to the plaintiff reasonable attorneys' fees but allows no fees to the defendant should he prevail. The argument against the constitutionality of the act proceeds upon the principle that the parties are entitled to the equal protection of the law, under the national constitution, which is violated because a right is given one and denied the other. And it violates the state constitution, which prohibits special laws and requires that general laws shall be uniform.

The libel and slander act was passed March 23, 1872 (Stats. 1871–72, p. 533), prior to the adoption of the codes and prior to the adoption of the new constitution. It was held in *Smith* v. *McDermott,* 93 Cal. 421, [29 Pac. 34], that the section of the act requiring plaintiff to file an undertaking for the payment of costs was constitutional; that the constitution did not repeal prior legislation. In *Caffey* v. *Mann,* 3 Cal. App. 124, [84 Pac. 424], the question was whether the defendant was entitled to recover $100 as attorneys' fees, in an action for slander, where the action had been dismissed by plaintiff. The lower court disallowed the item. The appellate court held that it was a proper charge as costs. (See, also, *Gaffey* v. *Mann,* 5 Cal. App. 712, [91 Pac. 172].) In both cases peti-

tion to have the cause heard in the supreme court was denied. The mechanics' lien law was passed after the adoption of the constitution in 1879 and was thus brought within its controlling provisions.

We discover no error in the record. The judgment and order are, therefore, affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 22, 1911.