[Civ. No. 4203.   Second Appellate District, Division Two.—March 25, 1924.]

## WILLIAM KOEBERLE, Respondent, v. TRIXIE FRIGANZA, Defendant; ALICE O'DAY, Administratrix, etc., Appellant.

[1] SALES—ACTION FOR GOODS SOLD AND DELIVERED—DEFENDANT AS WITNESS FOR PLAINTIFF — LEADING QUESTIONS. — In an action against two defendants for goods sold and delivered, the fact that one of said defendants, by her answer, has denied liability and pleaded that she was merely acting as the agent of her co-defendant, does not deprive plaintiff of the right of calling her as a witness, pursuant to the provisions of section 2055 of the Code of Civil Procedure, and propounding leading questions.

[2] ID. — ELECTION TO HOLD AGENT — LIABILITY OF PRINCIPAL. — The rule that when a third person knows he is dealing with an agent and knows who is the principal, and he elects to hold the agent rather than the principal, he cannot thereafter collect from the principal, is not applicable where said third person not only has not elected to hold the agent but, to the contrary, has requested and received the approval of, and sent all bills and statements to, the principal.

[3] ID. — BOOKS OF ACCOUNT — AUTHENTICATION. — In this action for goods sold and delivered, the books of account introduced by plaintiff were sufficiently authenticated, bookkeepers having testified that the books contained the items as charged from actual sales-slips made at the time of each transaction, that they were the same items as appeared upon the statement rendered to one of the defendants, and the other defendant (who claimed she was merely acting as the agent of her codefendant) having testified in detail to having purchased each article charged and to having used all that were not returned in the theatrical production of which her codefendant was the owner.

[4] ID.—RIGHT TO TESTIFY FROM COPY OF ACCOUNT.—In such action it was proper to permit counsel for plaintiff to examine one of the defendants from a statement or copy of the account which had been offered but not received in evidence, where said defendant had been over the entire account with the bookkeeper and she testified that she had purchased and received each item upon the date given by counsel for plaintiff.

---

1.  Permitting leading questions as matter within discretion of trial court, note, 17 Ann. Cas. 840.  See, also, 28 R. C. L. 590.

2.  See 1 Cal. Jur. 858; 21 R. C. L. 894.

3.  See 10 Cal. Jur. 907; 10 R. C. L. 1174.

4.  See 10 R. C. L. 1176.

[5] ID.—PLEADING—FINDINGS.—In such action, the complaint having been in two counts, one for goods sold and delivered upon an open book account and the other an account stated, and the court having found that merchandise of a given value was sold to the defendants, who had acted as agent for the other, of which a certain specified amount was purchased for the latter and that there had been paid on account of said goods, by goods returned and in cash, a certain sum, that a part of the goods were for the personal use of the former and she had paid therefor in full, and the court having further found that on a certain date an account was stated to the principal, showing a certain balance due, of which a certain sum was subsequently paid, there was no merit in the contention that the court did not find as to facts alleged in each count of the complaint; neither was there any merit in the assertion that the court failed to find that it was not true that the defendant who had merely acted in the capacity of agent, was indebted to plaintiff.

[6] ID.—NEW TRIAL—AMENDMENT OF COMPLAINT TO CONFORM TO PROOF—DISCRETION.—In such action, in ruling upon defendant's motion for a new trial, the trial court acted within its discretion in permitting plaintiff to amend his complaint to conform to the proof by alleging an account stated for a specified sum, and that a certain sum had been paid thereon, thereby reducing the amount of the judgment; and the filing of such amendment did not create a new cause of action.

(1) 40 Cyc., p. 2431.   (2) 2 C. J., p. 836, sec. 518.   (3) 22 C. J., p. 864, sec. 1035.   (4) 40 Cyc., p. 2461.   (5) 38 Cyc., p. 1969. (6) 31 Cyc., p. 450.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Bertin A. Weyl, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Leon E. Morris and Edward M. Jaffa for Appellant.

Constan Jensen and Horace S. Wilson for Respondent.

CRAIG, J.—The respondent, as assignee of J. W. Robinson Company, drygoods merchants, instituted this action against the above-named defendants for a balance claimed to be due for merchandise sold and delivered upon an open book account in September and October, 1919, and an account stated was also made the subject of a second count of the complaint, aggregating $2,148.37. The total amount for alleged purchases was $4,083.62, upon which $1,806 had been

paid in cash, and defendants were credited with $129.25 for goods returned. Since the trial Thomas O'Day died, and the administratrix of his estate was substituted in his stead during the pendency of this appeal.

It appears that during the year 1919, Thomas O'Day procured from the author, one Elmer Harris, the manuscript for a theatrical production, in which he agreed to star defendant Trixie Friganza at a stipulated salary of $500 per week and twenty-five per cent of the profits. O'Day resided in San Francisco, where this contract was entered into and signed by him, while Miss Friganza was to reside and conduct rehearsals at Los Angeles. The decedent did not make any of the alleged purchases in person, and had no charge account at Los Angeles, but defendant Friganza being known and having credit with merchants in Los Angeles, purchased costumes and materials from the company for herself and members of the cast. Defendant Friganza testified that at the time of making purchases she directed that certain items of the account be sent to her personally at her address in Los Angeles, and that others be sent to Mr. O'Day at San Francisco. All the items were entered by the sales people upon sales-slips in the name of Trixie Friganza, certain bills being forwarded to O'Day in the usual course of business. On October 2d, Robinson Company wired O'Day that Miss Friganza was selecting merchandise amounting to $3,000 for the production, that she requested that the same be charged to his account, and asking his approval. To this they received a reply that Mr. O'Day was absent, and the company on October 8th verified both communications by letter. October 22d, O'Day paid by check $1,000 on account, and on November 10th wrote Robinson Company of the fact, and stated: "A check will be sent from this office from time to time. Do not bother Miss Friganza about this account, as the account is handled entirely by this office." He had been advised that the company's books were closed on the twenty-fifth day of each month, and wrote them requesting ninety days' credit, which was granted. Subsequently they wrote him that Miss Friganza had requested that an inclosed bill for a negligee be sent him, which had been charged to her personal account, but was used in his production. To this O'Day replied that the account he was handling for Miss Friganza was her personal

account, which was being handled through his office, but that if she desired such items settled in the same manner, it was entirely satisfactory to him. On January 13, 1920, a statement was sent him showing a balance of $2,148.37, with the suggestion that it was overdue, to which he replied that Miss Friganza would close January 24th, after which time he would not "represent her," and that he was forwarding the statement to her.

The complaint herein was filed in July, 1920, against both defendants, alleging that said sales were made to them at their personal instance and request, to which the defendant O'Day answered, denying liability in any amount, and defendant Friganza denied that she had purchased merchandise of the value of $4,083.62. She alleged that she had purchased goods, exclusive of those returned, reasonably worth $806, for which she had paid. She affirmatively alleged that the remainder "were not sold or delivered to this defendant by said company at her personal instance or request, or on open book account, but were sold and delivered by said J. W. Robinson Company to the defendant Thomas O'Day, this defendant acting in the purchase of said balance of said goods, wares and merchandise solely as the agent for said Thomas O'Day, and that said company well knew that this defendant was acting solely as the agent for said Thomas O'Day in the purchase of said balance of said goods, wares and merchandise, and well knew that said balance of said goods, wares and merchandise were not sold or delivered to this defendant personally."

Upon the trial the plaintiff, after ineffectual efforts to introduce the company's accounts as against defendant O'Day, called defendant Friganza pursuant to the provisions of section 2055 of the Code of Civil Procedure, to which no objection was interposed on behalf of her codefendant until leading questions were propounded, whereupon objection was made by counsel for O'Day that the questions were leading, and that the witness was a willing one as to matters about which she was testifying, and that she was not an "adverse party" within the meaning and intent of that section. His objections were overruled, and the witness testified that O'Day had instructed her in Los Angeles to "go there and order the costumes for the ladies of the company and have the bill sent to me at San Francisco,"

and that thereafter, at San Francisco, O'Day went over the statement with her, inquiring about various items, and as to whether or not the company had overcharged; that she assured him that the prices were not unreasonable, whereupon he instructed the manager of his company to send a check on account, and stated to the witness: "I don't want you to worry your head about it any further, and it will be paid."

[1] Appellant insists that the trial court erred in permitting the plaintiff to ask defendant Friganza leading questions. This contention is plainly without merit, if the right existed to call her at all. As was said in *Estate of Carson,* 184 Cal. 437, 447 [17 A. L. R. 239, 194 Pac. 5], section 2055 of the Code of Civil Procedure expressly permits just such an examination. The witness' willingness, from defendant O'Day's point of view, to testify in a manner detrimental to him, was not determinative of her status in the case, since she had been sued, like himself, for the whole indebtedness, and had by her answer denied any liability beyond her personal purchases, which she claimed to have paid. Thus she came into court as adverse, both to the plaintiff, and to her codefendant. Defendant O'Day did not appear in person to testify, and defendant Friganza's testimony stands uncontradicted, and would have been competent without regard to section 2055 of the Code of Civil Procedure; she was vigorously cross-examined by his counsel, and the objection raised goes rather to the weight than to the admissibility of the evidence. (*Estate of McDonald,* 191 Cal. 161 [215 Pac. 545]; *Imperial Water Co* v. *Imperial Water Dist.,* 62 Cal. App. 286 [217 Pac. 88].) Appellant argues that the witness was more properly assuming the position of a joint plaintiff, interested in seeing the case proven against defendant O'Day, but there is nothing in the pleadings or the evidence to indicate any interest of defendant Friganza in the collection of the account. It is always the province of the trial court, and of counsel, to elicit the truth regarding any issue. Had she taken the stand in her own behalf, she would have been subject to cross-examination by the plaintiff. If the facts were as she testified, and they are not denied, she must have denied liability, and this would inevitably have demanded an explanation. *Western Investment & Land Co.* v. *First National Bank of*

*Denver*, 64 Colo. 37 [172 Pac. 6], is cited by appellant as holding that a party appearing to the trial court not to be adverse should not be held to be within the statute, but it was there held that although a defendant who had suffered a default judgment to be taken against him might in the discretion of the court have been excluded, it was not error to admit the testimony, especially as the witness was fully cross-examined. Other authorities are cited which hold that a party so called must be an adversary, and not one maintaining the same issue, but they have no applicability to the facts before us. *Moore* v. *May*, 117 Wis. 192 [94 N. W. 45, 49], quoted in part by appellant, was an action involving some 209 defendants, members of a farmers' alliance, many of whom had previously dropped out, and certain of 120 defendants who did not answer, but admitted their liability, were called by the plaintiff as "adverse parties," and the trial court denied the answering defendants the right to cross-examine them. One of the vital issues was as to the liability of certain answering defendants who claimed they were not members of the combination, and denied that they had signed certain obligations. It was said by the supreme court of Wisconsin that the rulings of the trial court constituted error, and that the witnesses having defaulted, and admittedly authorized the borrowing of the money, it was for their interest to lower their own liability by shouldering some of it upon the others. It is not admitted, but is denied, that Miss Friganza ever purchased or assumed any part of the liability for the items in question, except as agent for O'Day, who had paid a portion thereof and had promised to pay the balance, instructing plaintiff not to look to her therefor. Further, a judgment against O'Day would not necessarily have absolved her from liability which under the pleadings might well have been found to exist jointly with him.

[2] The same witness testified that at some time between the 16th and 19th of September she commenced purchasing for the production, and that at the outset she requested of the credit manager that the costumes be charged to her name, inasmuch as Mr. O'Day was a San Francisco man, and had no account with the company, but that the bills should be forwarded to him. It is argued that, credit having been extended solely to the agent, with the knowl-

edge of the existence of the principal, the latter cannot be held. Many authorities are cited to the principle that if a creditor, knowing the principal, elects to charge the agent and look to him as the responsible debtor, he cannot thereafter collect from the former, which is doubtless the law "when the third person knows that he is dealing with an agent and knows who is the principal, and *elects to hold the agent rather than the principal.*" But there is no evidence that plaintiff's assignor at any time did not look to O'Day for collection. There is evidence that when the credit manager noticed the account steadily increasing to an amount in excess of $2,000, he at once communicated with O'Day's office, requesting approval of the same, which was subsequently received. *Gosliner* v. *Grangers' Bank,* 124 Cal. 225, 227 [56 Pac. 1029], cited by appellant, expressly recites that there was strong evidence tending to show that the "plaintiff did not believe that the Reeds were purchasing these goods as agents for the bank." Other authorities so cited involve contracts expressly made with the agent, as principal, all of which readily distinguish themselves without needed comment. Defendant Friganza received no bills after O'Day wrote Robinson Company.

It is next insisted that no account was ever stated between Robinson Company and defendant O'Day, but as we have already indicated, on January 13, 1920, a statement in the sum of $2,148.37 was rendered to O'Day, who on January 16th acknowledged its receipt, and on October 10, 1919, an account was stated, for $3,093.37, as found by the trial court.

[3] It is contended that the books of account were not authenticated, and that the court erred in admitting them in evidence. Bookkeepers testified that the books contained the items as charged from actual sales-slips made at the time of each transaction, that they were the same items as appeared upon the statement rendered Mr. O'Day, and defendant Friganza testified in detail to having purchased each article charged, and to having used all that were not returned in the production of which Mr. O'Day was the owner. [4] Objection was made that counsel for plaintiff was examining Miss Friganza from a statement or copy thereof which had been offered but not received in evidence. The court ruled that the record did not show such to be the

fact, and permitted the examination to proceed. However, the witness had been over the entire account with a book-keeper of plaintiff's assignor, and she testified that she had purchased and received each item upon the date given by counsel for plaintiff. It was subsequently stipulated that the amount shown was due Robinson Company, so that the objection need not seriously be considered, but such examination under the circumstances was proper. (*Grant* v. *Dreyfus*, 5 Cal. Unrep. 970 [52 Pac. 1074]; *People* v. *Lanterman*, 9 Cal. App. 674 [100 Pac. 720]; *Carpenter* v. *Ashley*, 16 Cal. App. 302 [116 Pac. 983].)

[5] The findings recite that merchandise worth $4,083.62 was sold to defendant Friganza, of which $3,277.62 was purchased for defendant O'Day; that there had been paid by goods returned, and in cash, $1,129.25; that defendant Friganza had purchased for personal use merchandise worth $806, which she had paid in full. It was further found that on October 10th, 1919, an account was stated with defendant O'Day, showing a balance of $3,093.37 due to plaintiff's assignor, of which $1,000 was paid October 22d, and judgment was rendered accordingly. Appellant's contention that the trial court did not find as to facts alleged in each count of the complaint is without merit, as is also the assertion that it failed to find that it was not true that defendant Friganza was indebted to plaintiff.

[6] Motion for a new trial was made, and in ruling upon the same the court announced that if the plaintiff felt advised to amend his complaint to conform to the proof by alleging that there was an account stated for $3,093.37, and that $1,000 had been paid thereon, permission would be granted to do so within ten days, and if so filed the motion would be denied. Plaintiff thereafter filed a consent that the balance demanded, $2,148.37, be reduced $55, and an order denying the motion for a new trial was entered. Appellant contends that the amendment so filed created an entirely new cause of action, but it was obviously the same cause of action for a lesser amount and was favorable to appellant. (*Laiblin* v. *San Joaquin Agr. Corp.*, 60 Cal. App. 416 [213 Pac. 529].) Pending a motion for nonsuit it is within the discretion of the trial court to permit the plaintiff to amend his complaint so as to conform to the evidence. (*Kamm* v. *Bank of California*, 74 Cal. 191 [15 Pac. 765]; *Bean* v.

*Stoneman,* 104 Cal. 49 [37 Pac. 777, 38 Pac. 39]; *Wise* v. *Wakefield,* 118 Cal. 110 [50 Pac. 310].) The right of the trial court to deny a new trial upon condition that plaintiff remit part of a judgment is too firmly established in this state by a long list of decisions to be now questioned. "It would be almost as great a stretch of judicial authority for us to undertake to overthrow this long established practice, as it would be to undertake to dispense with a statute." (*Davis* v. *Southern Pac. Co.,* 98 Cal. 13, 18 [32 Pac. 646]; *Shaffer* v. *Arnaelsteen,* 54 Cal. App. 719, 729 [202 Pac. 946]; *Bentley* v. *Hurlburt,* 153 Cal. 796, 803 [96 Pac. 890].) In the latter case it was held that the foregoing authorities constituted a complete answer to the contention that to remit an excess did not obviate the error in the original judgment. It nowhere appears that appellant was prejudiced by the entry of such order requiring modification in the absence of counsel, since there was abundant evidence warranting a judgment for the amount finally ascertained.

There are no other points requiring notice.

The judgment and order denying motion for new trial are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1924.

All the Justices concurred.