[Civ. No. 4261.   Second Appellate District, Division Two.—July 9, 1924.]

F. W. BRAUN, Appellant, v. STANLEY DALLIN et al., Respondents.

[1] VENDOR AND VENDEE—FORECLOSURE SALE—AGREEMENT TO SELL IF PARTY DID NOT BID — STATUTE OF FRAUDS—RIGHTS OF PARTIES.— Where a vendee went into possession of certain premises under a written contract of purchase, made improvements and at all times resided upon the premises, even after he had assigned such contract to another, which contract was, however, subsequently restored to the vendee, and the vendor, after transfer of title to said assignee, took a deed of trust from the latter which the vendor foreclosed, he (the vendor) agreeing orally with said vendee that if the latter would not bid at the foreclosure sale the vendor would sell the property to the vendee on certain terms, and the vendee did refrain from bidding, and the vendor and vendee occupied after the sale the same position that they had formerly occupied toward each other, except that the amount due from the vendee was increased, the vendor was the owner of the property subject to the right of said vendee to purchase the same, and the latter was entitled to remain in possession, the real contract measuring the rights of the parties being the written contract of purchase, which remained alive.

[2] ID.—QUIETING TITLE—CONTRACTS—RIGHTS OF PARTIES—CONSTRUCTION OF WHOLE TRANSACTION.—In an action to quiet title to certain property, in determining whether the rights of defendants to purchase said property are predicated upon a written contract of purchase or a verbal agreement, the court must construe the whole transaction from the facts presented, irrespective of the name by

---

2.   See 6 Cal. Jur. 256; 6 R. C. L. 836.

which it may have been designated or of any particular isolated feature of it.

[3] ID.—RIGHT OF PURCHASE—FINDINGS — EVIDENCE.—In such action, the findings considered as a whole sufficiently state that the defendants possessed a right to purchase the premises in question, based upon the entire transaction, beginning with the written contract, and including the verbal agreement, which was partially executed.

[4] ID.—INFERENCES — JUDGMENT.—Whenever the facts found are such as might authorize different inferences therefrom, it will be presumed that the inference made by the trial court was one that will uphold rather than defeat the judgment, and in such case an appellate court will not draw from those facts any inference contrary to that which might have been drawn by the trial court for the purpose of rendering its judgment.

[5] ID.—JUDGMENT—FINDINGS.—Where a judgment is justified by the facts shown upon an examination of the entire record a reversal will not be granted merely because of an erroneous finding or the failure of the trial court to make a finding upon any issue.

[6] ID.—POSSESSION — FINDINGS.—In such action, a finding that defendants were entitled to possession of the property in question was a decision upon the issue whether plaintiff was entitled to possession.

[7] ID.—INTEREST — JUDGMENT — CONSTRUCTION.—In such action, the findings, conclusions of law, and judgment require that defendants pay plaintiff a stated principal sum in fractional monthly amounts, and interest on deferred payments at a specified rate; and although worded slightly differently, there is no room for doubt that such rate of interest will accrue and be payable upon any remaining balance until fully paid, as the record stands.

---

(1) 27 **C. J.**, p. 328, sec. 416 (Anno.).   (2) 27 **C. J.**, p. 392, sec. 496 (Anno.).   (3) 32 **Cyc.**, p. 1376.   (4) 4 **C. J.**, p. 787, sec. 2740.   (5) 4 **C. J.**, p. 1059, sec. 3044.   (6) 38 **Cyc., p.** 1984.   (7) 32 **Cyc.**, p. 1378.

APPEAL from a judgment of the Superior Court of Los Angeles County.   T. N. Harvey, Judge.   Affirmed.

The facts are stated in the opinion of the court.

John E. Biby and Harry C. Biby for Appellant.

Clark, Law & Clay for Respondents.

---

4. See 2 Cal. Jur. 871, 873; 15 R. C. L. 877.
5. See 2 Cal. Jur. 1028, 1032; 2 R. C. L. 243.

CRAIG, J.—Suit was instituted January 12, 1922, by plaintiff and appellant, to quiet title to lot 89 of Tract 3987, in Los Angeles County, alleging that the defendants asserted some interest in said property adverse to plaintiff without right, that neither of them had any estate, right, title, nor interest therein, and praying that each of said defendants be required to set forth the nature of his claim, that the same might be determined, and that it be adjudged and decreed that plaintiff was the owner and entitled to a writ of possession thereof.

Defendants Dallin answered, denying that the plaintiff was the owner or entitled to possession of said lot, and affirmatively alleging that on November 25, 1921, the plaintiff threatened to sell the property under an alleged deed of trust which they believed to be void, and that to avoid litigation they agreed to refrain from bidding at such sale, and to buy the lot from the plaintiff for $1,150, and to pay $50 cash and $50 per month thereafter until the full sum had been paid, together with interest at seven per cent per annum, and that the plaintiff agreed to sell them the property upon such terms if they would not bid at the sale; that they thereafter notified the plaintiff that they were willing to proceed with the terms of their agreement, but that plaintiff refused to permit them to purchase the property upon said terms. They further alleged that they were the owners in fee of the property described, and prayed judgment that they be declared the lawful owners and that the plaintiff "have no interest therein and that the plaintiff be debarred and enjoined from asserting any claim thereto."

Defendant C. Robert Minton answered, denying for want of information or belief that the plaintiff was the owner or entitled to possession of the property, and alleging that he held a valid mechanic's lien against the premises for $471.38; and by cross-complaint against the plaintiff and defendants Dallin he alleged that the Dallins were at all the times mentioned the owners and in possession of said property, and that in pursuance of an agreement with them he furnished labor and materials between June 15 and August 15, 1921, in the construction of a dwelling-house thereon, and thereafter filed his duly verified mechanic's lien, above mentioned.

The defendants Dallin denied that Minton had performed the conditions of his contract, or that he was entitled to any amount. Defendant Ada Minton disclaimed.

The plaintiff, answering said cross-complaint, denied that the Dallins were the owners, but admitted that they were in possession of the premises at the times mentioned in the cross-complaint, and denied defendant Minton's right to a lien for labor and materials. He then alleges that prior to June 30, 1921, he was the owner in fee simple of said property, subject to a contract of purchase between himself and said Dallins; that on said last-mentioned date the latter assigned all their interest therein to cross-complainant Minton, and that the plaintiff and his wife on the same date also conveyed their interest to the same party, and received from Minton and his wife a promissory note for $834.50, secured by trust deed; that Minton defaulted in the payment of stipulated installments due upon his said note, and that the property was, on November 25, 1921, sold to the plaintiff by trustee's deed, duly executed and recorded.

The trial court found from the evidence adduced that "the title to the property . . . is in the plaintiff subject to the right of the defendants Dallin to purchase same for the sum of eleven hundred fifty dollars ($1150.00)." That the Dallins are in possession; that they went into possession on or about January 5, 1921, under an agreement to purchase from the plaintiff, subsequent to which time they made valuable improvements upon the premises. It is also found that on or about June 20, 1921, the Dallins transferred their interest to Minton, that Minton transferred to plaintiff, who in turn conveyed to Minton and took back a trust deed.

The findings further recite that thereafter, and on November 21, 1921, it was adjudged by the superior court that the agreement between the Dallins and Minton was void *ab initio,* and that Minton acquired no interest in the property from them; that thereafter and on or about the twenty-fifth day of November, 1921, "a verbal agreement was entered into between the defendants Dallin and the plaintiff that the plaintiff would foreclose his trust deed on said property and purchase same in at the sale thereof and if the defendants Dallin would not bid on said property but permit the plaintiff to purchase same at said foreclosure sale, the plaintiff would sell said property to the defendants

Dallin for the sum of eleven hundred fifty dollars ($1150.00), fifty dollars ($50.00) cash and fifty dollars ($50.00) per month thereafter with deferred payments bearing interest at seven per cent (7%) per annum; that thereafter on said 25th day of November, 1921, said plaintiff foreclosed said trust deed and bid said property in at the sale thereof; that said defendants Dallin were present at said sale, were ready and able to buy said property but refrained from so doing because of said verbal agreement with the plaintiff; immediately after said sale said defendants Dallin offered to pay to the plaintiff the sum of fifty dollars ($50.00) and enter into a written agreement to purchase said property according to the verbal agreement but the plaintiff refused to enter into said agreement and refused to sell said property to the defendants Dallin according to the verbal agreement herein mentioned; that since said time the defendants Dallin have at all times been ready, willing and able to perform the conditions of the verbal agreement to purchase said property.''

Judgment was given the plaintiff as to ownership of the property, subject to the right of defendants Dallin to purchase the same for $1,150 upon the terms and conditions specified in the findings. Defendant Minton does not appeal.

The principal ground of this appeal is the verbal agreement referred to herein and set forth in the finding above quoted. It is contended that an oral agreement to convey real property is void, and that no action can be based thereon; and that the trial court erred in permitting respondent to testify regarding the same. It appears from the record that appellant entered into a written contract of sale with respondents on January 5, 1921, of the property in question for a consideration of $1,132, payable $180 in cash and $15 per month; that thereafter and on June 20, 1921, respondents assigned their interest to Minton upon certain conditions which Minton did not fulfill, and that in an action subsequently decided between Minton and Dallin, wherein Braun was not a party, it was held that Minton had acquired no interest by the attempted assignment. Dallin had at the same time also caused Braun to convey his interest to Minton, which was subsequently recovered by Braun upon foreclosure of the trust deed. Respondents have at all times remained in possession, and Dallin testified that ''as quick as the court destroyed this instrument that I gave

to Minton I considered that it naturally reverted back and fell back in its old place"; "he said that if I did not bid that they would bid it in and that they would let me pay them what they had in it for the indebtedness·that was against the place, they would draw up the papers and let me pay them off, $50 down and $50 a month"; "I told him I knew at the time that I hadn't ought to pay all these expenses, but still rather than have trouble I thought to myself I had better do it"; "after the sale was over he came out and he says, 'All right, Mr. Dallin, we bid it in for the costs— for the costs and what there is in it.' And he says, 'You have your wife up in the morning and we will have the papers all ready for you to sign and you can go ahead and pay this indebtedness off and go right along.'"

The defense in this case, and the appeal, were obviously founded upon the acknowledged and well-known rule that a parol agreement for the sale of land, made after the termination of a prior written agreement, must be viewed as a new contract, and, standing by itself, is void under the statute of frauds. (*Smith* v. *Taylor,* 82 Cal. 533 [23 Pac. 217].) [1] But the facts remove this case from the application of that rule. Dallin's right to purchase was created by the written contract of sale of January 5, 1921; he built a house on the premises, and has since continued to reside thereon. No steps were taken by the vendor to terminate the contract or Dallin's interest. All that can be said of the intervening negotiations and litigation is that the vendor and the vendee prior to this suit found themselves in the same position which they had formerly occupied toward each other, except with an additional indebtedness resulting from building operations and the expense of the foreclosure. The "memorandum in writing" consisted of the contract of January 5, 1921, and it is impossible to discover any respect in which the position of either party thereto was changed, except that by subsequent arrangement between them, Braun assumed an added indebtedness and the amount due from Dallin was increased to include it. Appellant seeks to take advantage of the word "sale" because he had previously told Dallin that if he would not bid at the foreclosure sale he would "sell" him the property for $1,150, but it is evident that Dallin never considered his original contract at an end; when he tendered the $50 and demanded a writing

evidencing their verbal agreement, appellant demanded a larger payment, and finally wrote to Dallin that if he did not wish to buy on those terms he might pay $50 per month as rent. To this Dallin promptly replied by letter, "I had thought as soon as the sale of Nov. 25 came off things would be clear, and so they should have been. Through Minton's doings I have been damaged and still the damage goes on. My property here is in a stage that the storms and weather is very damaging to it saying nothing about the rest. As to paying you rent, that is absurd."

*Sandfoss* v. *Jones,* 35 Cal. 481, is not essentially unlike the case at bar in so far as the holding applies to the situation created by the facts recited. The supreme court there said, at page 486 of .35 Cal.:

"So far as the contract relates to the sale of real estate, it amounts to an agreement on the part of Jones and Blanchard to buy the property at sheriff's sale for the benefit of Bartram, who was the execution debtor, and to advance their own money, if necessary, for that purpose. Whether they paid for the real estate wholly or in part with Bartram's money, or their own exclusively, is immaterial. In either event, their agreement was not within the Statute of Frauds, and was not, therefore, void because it was not in writing. If the real estate was paid for by Jones and Blanchard with the money of Bartram, there was a resulting trust in favor of the latter which a court of equity will declare and enforce, for such a trust is expressly excepted from the operation of the Statute of Frauds. . . .

"If, however, we consider the averments of the complaint in the light which is most favorable to the defendants, we have a verbal agreement on their part with an execution debtor, whose land is about to be sold by the sheriff, to purchase it with their own funds, and hold it for his benefit. Such an agreement is equivalent to a loan of the money and a taking of the title as security for its repayment; or an agreement by one person to purchase land for the benefit of another, under circumstances which would amount to a fraud upon the latter, if the former was allowed to repudiate his promise, and, therefore, not within the Statute of Frauds."

In that case even the possession was surrendered by the debtor, whereas in the instant case there was no suggestion that the debtor in possession should sacrifice any right or

interest, nor is there any evidence that he conceded anything; and if such were claimed by appellant there is no evidence of any consideration having passed to the respondents therefor.

*Moore* v. *Bernardi,* 47 Nev. 33 [213 Pac. 1041, 220 Pac. 544], citing *Sandfoss* v. *Jones, supra,* held that where defendant occupant of land had an existing interest therein with the mortgagor, but, in reliance upon a parol agreement with the mortgagee that the latter would foreclose for defendant's use and benefit, and convey land to him upon acquiring title, if he would not become a bidder to protect his interest in the property, defendant refrained from protecting his interest so that he could not acquire title to the land in its perfected state through the foreclosure proceeding, the refusal of the mortgagor to afterwards convey was such a fraud as operated to convert the mortgagee into a trustee *ex maleficio.*

*Broadwell* v. *Maxwell,* 30 Ga. App. 738 [119 S. E. 344, 346], is in point. Maxwell instituted proceedings seeking to dispossess Broadwell for failure to pay rent. Broadwell alleged that the evidence showed that he did not originally hold the property as a tenant, but that he had owned it; that he had borrowed $3,500 from one Smith and given a deed to the property as security; that the debt was subsequently reduced to judgment by Smith, and the property offered for sale. Smith and Broadwell agreed that if the latter would not bid at such sale, Smith would buy in the property and allow the defendant to redeem it by payment of the amount of the indebtedness. Smith bought in the property, Broadwell refraining from making a bid, and the defendant, after extensions of time had been given him therefor, tendered to Smith's administrator the amount paid by Smith, which was refused. Judgment was given for the plaintiff and in reversing the lower court it was said on appeal:

"It follows, therefore, that when the defendant, Broadwell, made the alleged agreement with Smith's attorney, by the terms of which bids were choked off, and Smith bid in the property at reduced figures, and took a deed from the sheriff, and allowed Broadwell to remain in possession and pay a certain amount as 'rent,' with the right to redeem the property upon the payment of the indebtedness, the relationship

between the parties was that of trustee and *cestui que* trust.

"In the case now before us, where the evidence is supplemented by the written contract of 'tenancy,' so called, this contract must be construed in the light of this relationship, and equitable principles must be applied thereto, and this contract given effect accordingly. This being a resulting trust, the statute of frauds does not apply (*Chastain* v. *Smith,* 30 Ga. 96), and the parol agreement will be considered."

Upon the facts presented, and the authorities herein referred to, appellant is the owner of the property described, subject to the right of respondents Dallin to purchase the same, as recited by the judgment; and the respondents were entitled to remain in possession, as found by the trial court.

The findings state that the defendants Dallin have at all times been ready, willing, and able to perform the conditions of the "verbal agreement to purchase said property"; appellant contends that this language indicates that it was the theory of the trial court that the rights of the Dallins are predicated upon the verbal agreement, and that the contract to purchase the property is to be found in the verbal agreement only. [2] But we must construe the whole transaction from the facts presented, irrespective of the name by which it may have been designated (*Harron, Rickard & McCone* v. *Wilson, Lyon & Co.,* 4 Cal. App. 488 [88 Pac. 512]; *Hogan* v. *Anthony,* 40 Cal. App. 679 [182 Pac. 52]); or of any particular isolated feature of it. (*Palmer* v. *Howard,* 72 Cal. 293 [1 Am. St. Rep. 60, 13 Pac. 258].) [3] The findings considered as a whole sufficiently state that the Dallins possessed a right to purchase the premises in question, based upon the entire transaction, beginning with the written contract, and including the verbal agreement, which was partially executed. [4] Whenever the facts found are such as might authorize different inferences therefrom, it will be presumed that the inference made by the trial court was one that will uphold rather than defeat the judgment, and in such case an appellate court will not draw from those facts any inference contrary to that which might have been drawn by the trial court for the purpose of rendering its judgment. (*Taylor* v. *Avila,* 175 Cal. 203 [165 Pac. 533]; *Haight* v. *Haight,* 151 Cal. 90 [90 Pac. 197]; *Paine*

68 Cal. App.—9

v. *San Bernardino Valley Trac. Co.,* 143 Cal. 654 [77 Pac. 659].)

The real contract between the parties was the written agreement of January, 1921. This is still alive. The entire record justifies, and indeed requires, a finding to this effect, and that the rights of the parties are still measured by it. [5] The rule is well established that where a judgment is justified by the facts shown upon an examination of the entire record a reversal will not be granted merely because of an erroneous finding or the failure of the trial court to make a finding upon any issue. (*Anderson* v. *Blean,* 19 Cal. App. 581 [126 Pac. 859]; *American Nat. Bank* v. *Donnellan,* 170 Cal. 9 [Ann. Cas. 1917C, 744, 148 Pac. 188]; *Krasky* v. *Woolpert,* 134 Cal. 338 [66 Pac. 309].)

[6] We do not agree with appellant's contention that there was no finding that he was not entitled to possession, since the finding that respondents were entitled to possession was a decision upon the issue presented. (*Koeberle* v. *Friganza,* 66 Cal. App. 323 [226 Pac. 35].)

It is next contended that the judgment does not follow the decision, in that the judgment requires that respondents pay "$1,150, *including* interest," while the trial court's decision specifies $1,150 "*and* interest." [7] The findings, conclusions of law, and judgment require that respondents pay the appellant the principal sum of $1,150, in fractional amounts of $50 per month, and interest on deferred payments at the rate of seven per cent per annum; and although worded slightly differently, there is no room for doubt that such rate of interest will accrue and be payable upon any remaining balance until fully paid, as the record stands.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.